[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 11, 2007
THOMAS K. KAHN
CLERK

_____

Nos. 06-16324 & 06-16325

_____

D.C. Docket No. 06-01370-CV-2-WMA

KATIE LOWERY,
RICHARD LOWERY,
JOHNNY JONES,
ANGELA JONES,
DENNIS WINGO,
and other plaintiffs as listed
on complaint

Plaintiffs-Appellees,

versus

ALABAMA POWER COMPANY,
HONEYWELL INTERNATIONAL, INC.,
HANNA STEEL CORPORATION,
CERTAINTEED CORP., et al.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

**(April 11, 2007)**

Before TJOFLAT, BARKETT and MARCUS, Circuit Judges.

TJOFLAT, Circuit Judge:

In these consolidated appeals, we are confronted with the task of interpreting several provisions of the Class Action Fairness Act of 2005 ("CAFA" or the "Act"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). The plaintiffs-appellees (the "plaintiffs") sued the defendants-appellants (the "defendants") in an Alabama circuit court, alleging various tort claims under state law. The defendants removed the case to federal district court, citing CAFA as a basis for removal. The district court, upon motion to remand, found that the defendants did not carry their burden of establishing that the court had jurisdiction under the Act and remanded the case to the Alabama court. CAFA authorizes appeals of remand orders in cases that fall within the Act's ambit; the defendants petitioned this court for leave to take such an appeal, and we granted their petition.

To decide this case, we must unravel some of the mysteries of CAFA's cryptic text. We must also consider existing principles of law governing removal generally – who bears the burden of establishing that removal is proper, how that party can satisfy its burden, and how a district court must proceed in evaluating its jurisdiction after removal.

**I.**

On January 24, 2003, Katie Lowery and eight other residents of Jefferson County, Alabama[1] filed suit in the Jefferson County Circuit Court against twelve corporations[2] and 120 fictitious entities for discharging particulates and gases into the atmosphere and ground water. Their complaint, framed in six counts,[3] alleged that this pollution caused them to suffer personal injuries, physical pain and mental anguish, and the loss of the use and enjoyment of their property; each plaintiff demanded compensatory and punitive damages of $1,250,000. Between

---

[1] Katie Lowery, Richard Lowery, Johnny Jones, Angela Jones, Dennis Wingo, Michelle Wingo, Carolyn Brannon, Deginald Hill and Anita Hill were the original named plaintiffs.

[2] The twelve defendants were Honeywell International, Inc.; Hanna Steel Corporation ("Hanna Steel"); CertainTeed Corporation; Butler Manufacturing Co.; Bailey PVS OVS Oxides, LLC; Allied Signal, Inc.; ABC Acquisitions; Polymer Coil Coaters; United States Steel Corporation; W.J. Bullock, Inc.; Fritz Enterprises, Inc.; and Vulcan Materials, Inc.

[3] The complaint's six counts were based on Alabama tort law. Count One alleged trespass to the plaintiffs' person and realty. In Count Two, the plaintiffs alleged that the defendants "negligently, wantonly or intentionally caused them injury" by discharging pollutants; or by manufacturing, distributing, maintaining, designing, or servicing equipment used by the defendants; or "by failing to warn that equipment that they manufactured, maintained, designed or serviced was likely to cause or allow or fail to detect discharges into the atmosphere." Count Three set forth a nuisance claim; plaintiffs alleged that the defendants "have created and are creating a nuisance that has caused injury to the plaintiffs." In Count Four, the plaintiffs claimed that the defendants discharged pollutants "with knowledge that they are diminishing the ability of the Plaintiffs to use and enjoy their property and with further knowledge that they may be causing the Plaintiffs to suffer physical injury and with further knowledge that they were likely to cause the Plaintiffs extreme emotional distress." Plaintiffs alleged, in Count Five, that the fictitious defendants manufactured products that were not reasonably safe, breached implied warranties of safety and fitness, were liable under the Alabama Extended Manufacturers Liability Doctrine, failed to adequately warn, or otherwise breached duties to the plaintiffs. In Count Six, the plaintiffs charged fictitious defendants with negligently, wantonly or intentionally breaching their duty to perform various services for the named defendants related to the operation of premises near the plaintiffs' property.

January 24, 2003 and June 20, 2006, the plaintiffs amended their complaint three times, adding more than four hundred plaintiffs[4] and amending their prayers for relief.[5] The amended prayers for relief no longer claimed $1,250,000 on each claim, but instead, sought "compensatory and punitive damages in an amount . . . in excess of the [court's] minimum jurisdictional limit."[6] The third and final amended complaint, filed on June 20, 2006, added two defendants: Alabama Power Company ("Alabama Power") and Filler Products Company, Inc. ("Filler Products").

On July 17, 2006, Alabama Power filed a notice of removal under the "mass action" provision of CAFA, 28 U.S.C. § 1332(d)(11), in the United States District Court for the Northern District of Alabama. In its notice of removal, Alabama Power asserted that the district court had jurisdiction over the case because the requisite diversity of citizenship existed, the complaint consisted of the claims of more than 100 persons, each claim was for an amount in excess of $75,000, the

---

[4] These plaintiffs were added as parties because their claims, like those of the original plaintiffs, shared common questions of law and fact. See Ala. R. Civ. P. 20. Although the plaintiffs could have brought the suit as a class action, they did not do so. See Ala. R. Civ. P. 23.

[5] In their answers to the plaintiffs' initial and subsequent complaints, the defendants denied liability. Some of the answers contained affirmative defenses, none of which are pertinent to this appeal.

[6] Circuit courts in Alabama have jurisdiction over civil matters in which the amount in controversy exceeds $3,000, exclusive of interests and costs. Ala. Code § 12-11-30(1).

claims totaled in excess of $5,000,000, and the claims involved common questions of law or fact.[7] Alabama Power attached to its notice of removal copies of the original complaint and the third amended complaint.[8]

The plaintiffs responded to Alabama Power's notice of removal on August 3, 2006 by filing a motion to remand the case to the Jefferson County Circuit Court. Their motion asserted that Alabama Power had not met its burden of establishing federal jurisdiction because nothing in the notice of removal or the complaint indicated the specific amount of damages the plaintiffs were actually

---

[7] As we explain in detail in part III, infra, CAFA gives the district courts subject matter jurisdiction to entertain a "mass action" removed from state court provided that the action has been brought by 100 or more plaintiffs whose combined claims total in excess of $5,000,000. In its notice of removal, Alabama Power, believing that the claims of each plaintiff had to exceed $75,000 in order for the district court to have jurisdiction, asserted that the total of each plaintiff's claims exceeded that amount. Alabama Power subsequently abandoned this assertion, contending instead that the $75,000 figure is a limitation on the district court's exercise of its jurisdiction over a mass action's discrete plaintiffs rather than a jurisdictional prerequisite for the mass action itself. In other words, Alabama Power asserted that CAFA bars the court from asserting jurisdiction over any plaintiff whose claims do not exceed a total of $75,000. We discuss this issue further in part III, infra.

[8] The record of the proceedings in the Jefferson County Circuit Court that was provided to the district court following the removal of this case reveals that the parties engaged in considerable discovery between the filing of suit and June 20, 2006, the date plaintiffs filed their third amended complaint and added Alabama Power and Filler Products as defendants. Although the record does not include the discovery, it does indicate that the plaintiffs provided the defendants (with the exception of Alabama Power and Filler Products) with the location of the plaintiffs' properties and their residences. We do not know whether Alabama Power had access to this discovery prior to filing its notice of removal. What we do know is that Alabama Power cited nothing from such discovery in support of its notice of removal or in its subsequent argument to the district court in opposition to the plaintiffs' motion to remand the case to state court.

5

claiming.[9]  As an alternative ground for remanding the case, the plaintiffs asserted that the case fell within the "local controversy" exception to CAFA, 28 U.S.C. § 1332(d)(4).[10]

Alabama Power filed a supplement to its notice of removal on August 4, articulating three reasons why it believed the district court had subject matter jurisdiction over the case.  First, the case involved claims of more than 100 persons.  Second, to reach the required minimum total of $5,000,000 in value, each plaintiff's claims would need to yield only $12,500.  Third, plaintiffs in recent mass tort actions in Alabama had received either jury verdicts or settlements for greater than $5,000,000.

In addition to supplementing its notice of removal, Alabama Power moved the district court for leave to engage in discovery, attaching to its motion a

---

[9] The motion to remand stated:

> Alabama Power Company's Notice of Removal assumes a specific minimum amount of damages necessary for removal under CAFA, $5,000,000, as being claimed by the Plaintiffs, even though the Plaintiffs' Complaint states none. Similarly, the Notice of Removal states that "each individual claim exceeds $75,000," whereas Plaintiffs' Complaint references no specific amount of damages.

The motion to remand did not challenge Alabama Power's representation that the diversity of citizenship required by CAFA was present.  The presence of the requisite diversity, which we refer to as "minimal diversity," is not an issue in this appeal.

[10] We refer to this exception, which plays no role in our disposition of this appeal, in parts III and VI, infra.

proposed request for admissions, which we reproduce in the margin.[11]  Alabama

Power requested leave for discovery in the event the court felt that the $5,000,000

jurisdictional amount was not established by Alabama Power's notice of removal

and supplement.  On August 9, the plaintiffs responded to Alabama Power's

discovery request by moving the district court "for leave to take . . . depositions of

defendant corporations that [were] citizens of the state of Alabama."  The

plaintiffs sought leave to take these depositions in order to obtain evidence to

support their invocation of the CAFA's "local controversy" exception.

Two days later, on August 11, the district court held a hearing regarding its

jurisdiction.  The court did not limit its consideration to its jurisdiction over the

claims of Alabama Power, but rather considered its jurisdiction over the action as

a whole.[12]  At the hearing, plaintiffs' counsel orally withdrew their motion to

---

[11] The proposed request for admissions asked each plaintiff:

1. Admit that each individual plaintiff's claim exceeds $75,000.  If you deny that any plaintiff's claim exceeds $75,000, please identify each and every plaintiff whose claim does not exceed $75,000 and state the precise amount of each such plaintiff's claim.  2. Admit that the matter in controversy meets or exceeds $5,000,000 exclusive of interest and costs.

[12] At the hearing, the district court asked the assembled counsel for the named defendants whether there was any opposition to removal of the action.  Hearing none, the court stated that "[y]ou are all in agreement then that Alabama Power Company has successfully removed this case over here. . . .  I believe almost all of the 14 [defendants] are here.  So you are happy to have one of your fellow defendants [drag] you over to the federal court."  Although counsel maintained that CAFA did not require their clients to consent to Alabama Power's removal of the case, nine of the original defendants and Filler Products subsequently filed a written motion

7

remand the case and conceded jurisdiction.[13]  The court pressed plaintiffs' counsel

on the issue, inquiring, "Lloyd, you and Bill seriously think that one or more of

your 400 plaintiffs is going to have a shot at more than $75,000?"  Plaintiffs'

counsel responded, "One or more, Judge.  All of them don't."  Despite the

plaintiffs' withdrawal of the motion to remand, the court concluded that it would

take under advisement the issue of its subject matter jurisdiction.  To that end, on

August 16, the court ordered the plaintiffs to file, under the constraints of Federal

Rule of Civil Procedure 11,[14] the names of all plaintiffs whose claims could

seeking to join in Alabama Power's removal.  We discuss the removability of the claims against
the various defendants in part II.B, infra.

[13] The plaintiffs' concession came during a colloquy between the district court and
counsel.  Plaintiffs' counsel stated: "Judge, we would like to on behalf of the plaintiffs withdraw
our motion to remand.  It's fine with us to stay right here."  When the court inquired about the
pending motions for leave to take depositions and conduct limited discovery, counsel for
Alabama Power responded, "The plaintiff is conceding the amount in controversy, Judge.  That's
no longer needed."

[14] Fed. R. Civ. P. 11(b) provides, in relevant part:

By presenting to the court (whether by signing, filing, submitting, or later
advocating) a pleading, written motion, or other paper, an attorney or
unrepresented party is certifying that to the best of the person's knowledge,
information, and belief, formed after an inquiry reasonable under the
circumstances,–

(1) it is not being presented for any improper purpose, such as to harass or to
cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by
existing law or by a nonfrivolous argument for the extension, modification, or
reversal of existing law or the establishment of new law;

reasonably be expected to exceed $75,000.[15] In its order, the court reserved ruling on Alabama Power's motion to engage in limited discovery.

The plaintiffs responded to the district court's August 16 order the same day it was issued, stating that they lacked sufficient information to admit or deny that each claim was worth $75,000. The next day, they moved the court to set aside its August 16 order or accept their response to that order as adequate. Then, at a hearing held on August 22, plaintiffs' counsel orally moved the court to reinstate their motion to remand, contending that they never conceded federal jurisdiction and that it was Alabama Power's burden to show that each plaintiff's claims amounted to more than $75,000 (as Alabama Power itself had asserted in its notice of removal). Although Alabama Power objected to the plaintiffs' attempt to reinstate their motion to remand, the district court reinstated the motion. Then, before adjourning the hearing, the court queried whether it had jurisdiction to litigate the claims against the defendants who had been made parties to the case

---

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

[15] Specifically, the court charged the plaintiffs with filing "the names and addresses of all plaintiffs whose claims can reasonably be expected to exceed $75,000 in value, together with a one paragraph explanation for each said claim as to why it is worth more than $75,000, and what amount each said plaintiff believes his or her claim is reasonably worth."

prior to CAFA's effective date (the "pre-CAFA defendants") and asked counsel to brief the issue.

On August 29, Alabama Power filed a response to the plaintiffs' motion for reconsideration of the August 16 order.  It contended that CAFA's $75,000 provision is an exception to the exercise of the court's jurisdiction, rather than a threshold jurisdictional requirement.  In other words, Alabama Power argued that jurisdiction attaches upon a showing of at least 100 plaintiffs and a total amount in controversy exceeding $5,000,000 (after which the court must dismiss individual plaintiffs whose claims do not meet the $75,000 exception).[16]  The plaintiffs replied to Alabama Power's response on September 11, contending that Alabama Power bore the burden of establishing that the claims of each individual plaintiff exceeded $75,000.  The plaintiffs further asserted that Alabama Power had not demonstrated that the claims of even one plaintiff exceeded $75,000, or that the total amount in controversy exceeded $5,000,000.  Finally, the plaintiffs – expanding upon the court's concerns about its power to entertain the claims against the pre-CAFA defendants – argued that the court lacked jurisdiction over

_____

[16] In its August 29, 2006 response, Alabama Power noted that, while it had stated at the August 22 hearing that it bore the burden of establishing that $75,000 was in controversy as to at least one plaintiff, it later determined (purportedly under the plain meaning of CAFA) that it did not bear the burden of establishing that any of the plaintiffs' claims exceeded $75,000.  Alabama Power contended that, assuming, arguendo, that it did bear the burden of establishing that at least one plaintiff's claims exceeded $75,000, it had satisfied that burden.

the entire case because the action was originally filed prior to CAFA's effective date.

On October 12, 2006, the district court granted the plaintiffs' motion for reconsideration of its August 16 order and entered an order remanding the case to the Jefferson County Circuit Court. Alabama Power moved the court to reconsider its decision, pointing out that some of the factual assertions in the memorandum opinion accompanying the October 12 order were incorrect.[17] The court granted the motion and issued a substitute order and accompanying memorandum opinion on October 24, 2006. Lowery v. Honeywell Int'l Inc., 460 F. Supp. 2d 1288 (N.D. Ala. 2006).[18]

In its October 24 memorandum opinion, the district court held that, as a threshold matter, it lacked jurisdiction over the claims against the defendants who

---

[17] In its October 12 memorandum opinion, the court stated: "Nowhere in the original complaint, or in any subsequent amendment, does any plaintiff claim or otherwise designate a specific amount of damages, and all parties agree that few, if any, of the 418 plaintiffs have claims of more than $75,000 in value." In its motion for reconsideration, Alabama Power noted that this factual assertion was incorrect because the plaintiffs had made the following demand in the original complaint: "Each plaintiff demands judgment against said Defendants in the sum of one million two hundred fifty thousand dollars and costs." Furthermore, Alabama Power never agreed that "few, if any" of the plaintiffs had claims for more than $75,000.

[18] In the October 24 memorandum opinion, the court noted the factual error Alabama Power had alluded to, but stated: "There is nothing in the original complaint to distinguish between a plaintiff who may be claiming severe lung disease from one who may be claiming grit in her grits." Lowery, 460 F. Supp. 2d at 1291. While the substitute opinion correctly noted the $1,250,000 ad damnum clause in the original complaint, the court adhered to its decision to remand the case to state court.

11

had been made parties prior to CAFA's effective date. Hence, only Alabama

Power and Filler Products were properly before the court. Addressing these

defendants, the court observed that CAFA had not changed the rule that "when a

state court complaint is uncertain or silent on the amount being sought, the

removing defendant under 28 U.S.C. § 1332 has the burden of proving the

jurisdictional amount by a preponderance of the evidence," id. at 1296, and held

that Alabama Power had failed to prove that CAFA's jurisdictional amounts were

satisfied.[19] That is, these defendants had shown neither that one plaintiff had

claims in excess of $75,000, nor that all of the plaintiffs' claims exceeded

$5,000,000 in the aggregate.[20]

---

[19] The district court rejected out of hand Alabama Power's argument that the plaintiffs were bound by the ad damnum clause of their original complaint, in which each claimed damages in the amount of $1,250,000. The court did so under the assumption that Alabama Power could not take advantage of what plaintiffs had sought against its co-defendants in their original complaint. "Alabama Power's argument is unconvincing because the action had not 'commenced' as to it when the original complaint was still in effect. The action did not so 'commence' as to Alabama Power until the third amended and recast complaint was filed, and by that time plaintiffs had eliminated any specification of damages being sought." Lowery, 460 F. Supp. 2d at 1296.

[20] Having found that no plaintiff had claims totaling in excess of $75,000, the court sidestepped the question whether, if at least one plaintiff's claims satisfy that amount, the court could entertain the mass action provided the other jurisdictional requirements were met. The court stated: "This court, based on its experience and on the voluminous state court file, frankly doubts, despite plaintiffs' counsel's bravado on behalf of some of his unnamed clients, that any plaintiff's claim exceeds $75,000 in value, much less that all claims aggregate in excess of $5,000,000 in value, as required for a CAFA removal." Id. at 1297. Counsel simply "cannot be expected to know the values of their claims at this juncture." Lowery, 460 F. Supp. 2d at 1301. We address this question in part III.B, infra.

12

Following the district court's remand order of October 12, 2006, Alabama Power, pursuant to CAFA's removal provision § 1453(c)(1),[21] moved this court on October 19, for leave to appeal.[22] On October 20, a group consisting of all but two of the pre-CAFA defendants did the same.[23] We granted both motions on December 8, 2006 and subsequently consolidated the appeals.

The defendants' appeals require us to address four distinct issues, and we address each in turn in the parts of this opinion that follow. In part II, we consider whether the removal of an action under CAFA by a defendant added as a party after CAFA's effective date removes the claims against all of the defendants in the action – including those claims brought before the effective date. Part III dissects CAFA's "mass action" provisions to identify the requirements for subject matter jurisdiction created by those provisions. In part IV, we set forth the applicable burden of proof in establishing subject matter jurisdiction in a removed case in which damages are unspecified, and we identify the party that bears this burden under CAFA. In part V, we determine what a district court may consider in reviewing the propriety of removal that is timely challenged by a motion to

---

[21] We discuss § 1453 in far greater detail in part II.B, infra. For present purposes, we note that § 1453(c)(1) allows for appeal from a district court order granting remand to state court.

[22] Filler Products did not join in the motion.

[23] ABC Acquisitions and Polymer Coil Coaters did not join in the motion.

remand. This inquiry requires us to examine the significance of the existing removal procedures under 28 U.S.C. § 1446 – which are incorporated, in part, by CAFA – as well as the propriety of post-removal discovery on the issue of jurisdiction. Part VI applies the relevant legal principles to the instant case. Finally, part VII briefly concludes.

## II.

We review <u>de novo</u> the district court's decision to remand a case to state court for lack of subject matter jurisdiction. <u>Miedema v. Maytag Corp.</u>, 450 F.3d 1322, 1326 (11th Cir. 2006); <u>see</u> 28 U.S.C. § 1453(c)(1) (notwithstanding 28 U.S.C. § 1447(d), court of appeals may review remand order where case was removed under CAFA).

## A.

Congress enacted CAFA to address inequitable state court treatment of class actions and to put an end to certain abusive practices by plaintiffs' class counsel. CAFA § 2, 119 Stat. at 5. CAFA seeks to address these inequities and abusive practices by, among other things, broadening federal diversity jurisdiction over class actions with interstate implications. CAFA § 2, 119 Stat. at 5; <u>see also</u> <u>Miedema</u>, 450 F.3d at 1329 ("[T]he text of CAFA plainly expands federal jurisdiction over class actions and facilitates their removal[.]").

14

CAFA amends the federal diversity jurisdiction statute, 28 U.S.C. § 1332, by inserting a new subsection, § 1332(d). This new subsection works a sea change in diversity jurisdiction for certain class actions. It broadens diversity jurisdiction by establishing lower threshold requirements for jurisdiction and abrogating long-established precedent.[24] Subject to certain exceptions designed to keep purely local matters and issues of particular state concern in the state courts, § 1332(d)(3) to (5), CAFA provides federal courts with jurisdiction over class actions provided that: the number of plaintiffs in all proposed plaintiff classes exceeds one hundred,

---

[24] Following the enactment of CAFA, federal courts no longer look to the familiar requirements of 28 U.S.C. § 1332(a) to determine if the court has diversity jurisdiction over certain class actions. Instead, federal courts now look to § 1332(d)(2).

Prior to CAFA, the Supreme Court had interpreted the "diversity" requirement of § 1332(a) to require that each named member of the plaintiff class be diverse from each of the defendants. See Snyder v. Harris, 394 U.S. 332, 340, 89 S. Ct. 1053, 1059, 22 L. Ed. 2d 319 (1969); Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356, 41 S. Ct. 338, 65 L. Ed. 673 (1921). The new § 1332(d) replaces Ben-Hur's modified "complete diversity" requirement with a "minimal diversity" requirement under which, for purposes of establishing jurisdiction, only one member of the plaintiff class – named or unnamed – must be diverse from any one defendant. § 1332(d)(2).

Before CAFA, the claims of a class of plaintiffs were not permitted to be aggregated for purposes of satisfying the jurisdictional amount requirement of § 1332(a) and, therefore, federal courts did not have jurisdiction over the claims of any individual plaintiffs that failed to satisfy the jurisdictional amount. See Zahn v. Int'l Paper Co., 414 U.S. 291, 94 S. Ct. 505, 38 L. Ed. 2d 511 (1973); Snyder, 394 U.S. at 340, 89 S. Ct. at 1059. But see Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005) (holding – approximately four months after CAFA's enactment – that under the 1990 supplemental jurisdictional statute, 28 U.S.C. § 1367, a federal court has supplemental jurisdiction over claims of class members failing to meet § 1332(a)'s jurisdictional amount provided that the claims of a single plaintiff in the class action meet the amount in controversy). CAFA replaces this "non-aggregation" principle with an amount in controversy requirement that explicitly permits aggregation of claims. § 1332(d)(6).

§ 1332(d)(5)(b); any member of the plaintiff class is diverse from any defendant, § 1332(d)(2); and the aggregate of the claims of individual class members exceeds $5,000,000, exclusive of interests and costs. § 1332(d)(2), (6); see also Miedema, 450 F.3d at 1327; Evans v. Walter Indus., Inc., 449 F.3d 1159, 1163 (11th Cir. 2006).

In this part, we discuss the issues related to the proper interpretation of CAFA's removal provisions raised by the present dispute. In part III, infra, we address in greater detail the requirements that must be met for the district court to have subject matter jurisdiction over a mass action under CAFA.

B.

We must first address whether the pre-CAFA defendants could, as a procedural matter, properly join in the removal to federal court initiated by Alabama Power. Alabama Power alone among the defendants removed this action while the other defendants – at first passively and then explicitly – rode Alabama Power's coattails into the district court. What the district court had before it in considering the propriety of removal was limited to those documents provided by Alabama Power in seeking removal.

The issue here arises because the plaintiffs amended their complaint to add Alabama Power and Filler Products as defendants on June 20, 2006 – after CAFA

became law. See CAFA § 9, 119 Stat. at 14 ("The amendments made by this Act shall apply to any civil action commenced on or after . . . February 18, 2005."). Alabama Power filed a notice of removal, in which nearly all the other defendants later joined,[25] citing as a basis for federal jurisdiction CAFA's provisions pertaining to "mass actions" under § 1332(d)(11). The plaintiffs argue, and the district court held, that because the action against the pre-CAFA defendants "commenced" before the Act's effective date, those defendants could not join in the removal, regardless of whether Alabama Power was itself entitled to remove the action.

### 1.

Removal of state court actions to federal court involves both jurisdictional and procedural considerations. See Ariail Drug Co., Inc. v. Recomm Int'l Display, Inc., 122 F.3d 930, 933 (11th Cir. 1997); Monroe v. United Carbon Co., 196 F.2d 455, 456 (5th Cir. 1952).[26] For the purpose of our present discussion of removal

---

[25] The district court never specifically addressed the issue of removal as to the remaining three defendants – Allied Signal, Inc., ABC Acquisitions, and Polymer Coil Coaters – who did not seek joinder. But the court did note disapprovingly in its substitute order of October 24, 2006 that Filler Products had never itself filed a timely notice of removal in accordance with the procedural requirements of 28 U.S.C. § 1446 (which are adopted by CAFA's removal section, 28 U.S.C. § 1453). Because we conclude that Alabama Power could procedurally remove the action as a whole, including all defendants, we need not concern ourselves with the circumstances pertinent to each named defendant.

[26] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to

17

procedure, however, we observe that CAFA's jurisdictional and procedural provisions operate in tandem with regard to removal. The availability of federal jurisdiction created by CAFA in § 1332(d), and the Act's procedural removal provisions under § 1453, both depend on whether a given suit constitutes a "class action" as defined by the statute.

The terminology of the statute can be somewhat convoluted, so we track it methodically. Alabama Power removed this action as a mass action under CAFA. § 1332(d)(11). Under that subsection, "a mass action shall be deemed to be a class action" subject to certain other CAFA provisions. § 1332(d)(11)(A). We discuss the substantive jurisdictional import of § 1332(d)(11)(A) in much greater detail in part III.B, infra, but for our present purposes it is important to note that the plain language of the provision makes it clear that any "mass action" is also considered a "class action" for the purposes of CAFA's removal provisions.[27] CAFA generally creates federal jurisdiction over "any civil action" that meets the various

October 1, 1981.

[27] A "mass action" is considered a "class action" only insofar as the latter term is used throughout CAFA to describe those actions over which the Act creates expanded diversity jurisdiction. By its own terms, the statute defines mass action specifically to exclude formal class actions brought under Fed. R. Civ. P. 23 or analogous state rules or statutes. § 1332(d)(11)(B) (citing, as an exception from the "mass action" definition, any "class action" defined by 28 U.S.C. § 1711(2)). Congress's peculiar drafting in this regard gives mass actions the character of a kind of statutory Janus; under CAFA, a mass action simultaneously is a class action (for CAFA's purposes) and is not a class action (in the traditional sense of Rule 23 and analogous state law provisions).

18

jurisdictional requirements and "is a class action." § 1332(d)(2). CAFA's procedural removal section, § 1453, adopts the "class action" definition of CAFA's substantive section, § 1332(d), and provides for removal of "[a] class action . . . without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants." § 1453(a), (b). Importantly, § 1453 otherwise adopts the procedural requirements of the general removal statute, 28 U.S.C. § 1446. § 1453(b). While adopting § 1446 generally, § 1453 expands the availability of removal by eliminating the one-year limited removal period for diversity suits. § 1453(b). The import of the shared "class action" definition in CAFA's various provisions is that any lawsuit that meets the jurisdictional requirements of a "mass action" is also a removable "class action."

## 2.

With that background, we now must determine whether the claims against the pre-CAFA defendants were properly included in the removal to the district court. Although the plaintiffs dispute whether CAFA's provisions apply to the claims against the pre-CAFA defendants, they have not argued that CAFA is wholly inapplicable to the entire case. In other words, plaintiffs do not dispute that CAFA applies to Alabama Power, which was added as a defendant after

19

CAFA's effective date.[28]  Thus, we consider only whether the pre-CAFA

defendants can, under CAFA's procedural removal provisions, "tag along" with

Alabama Power's removal to federal court.

We conclude that, in light of the plain language of CAFA, removal under

the statute encompasses all the claims in the "action" as a whole, not simply the

claims against a removing defendant.  Both the substantive and procedural

sections of CAFA dealing with removal of mass actions refer to removal of the

"class action."[29]  See § 1332(d)(11)(A) ("[A] mass action shall be deemed to be a

class action[.]"); § 1453(b) ("A class action may be removed to a district

court[.]").  The statute's reference to "actions," as opposed to "claims," suggests

that removal under CAFA is broadly inclusive.  See Braud v. Transport Serv. Co.,

445 F.3d 801, 808 (5th Cir. 2006) ("[I]t is the 'action,' not claims against

particular defendants, that is removable.") (citing Dinkel v. Gen. Motors Corp.,

---

[28] CAFA applies to "any civil action commenced on or after" its effective date.  CAFA §
9, 119 Stat. at 14.  Courts have separately considered whether an action "commences" as to a
newly added defendant – thus making CAFA applicable to that defendant – when a plaintiff
amends its pre-CAFA complaint to add the defendant after the Act's effective date.  See, e.g.,
Braud v. Transport Serv. Co., 445 F.3d 801, 803–08 (5th Cir. 2006).  That question is determined
by reference to state law, but because the parties here do not dispute the applicability of CAFA to
Alabama Power, we need not consider it.  See Tmesys, Inc. v. Eufaula Drugs, Inc., 462 F.3d
1317, 1319 (11th Cir. 2006) (noting that commencement of an action under CAFA is determined
by state law).

[29] See infra note 41.

20

400 F. Supp. 2d 289, 294 (D. Me. 2005)).[30]  Furthermore, a class action removable

under CAFA "may be removed by any defendant without the consent of all

defendants."  § 1453(b).  Read together, these provisions establish that one

defendant may remove the entire action, including claims against all defendants,

using the procedures established by § 1453 and the incorporated provisions of §

1446.  See id. ("The language of CAFA is plain that any single defendant can

remove (without the consent of the other defendants) the entire class action (not

merely the claims against that defendant)."); Kitson v. Bank of Edwardsville, No.

06-528, 2006 WL 3392752, at *3 (S.D. Ill. Nov. 22, 2006) (slip op.) ("The clear

language of the statute permits the removal of a 'class action,' regardless of

whether specific claims asserted in the action are removable or not."); Robinson v.

Holiday Universal, Inc., No. 05-5726, 2006 WL 470592, at *3 (E.D. Pa. Feb. 23,

2006) (unpublished) (post-CAFA defendant "removed the entire class action and

not just the claims against it" where, at the time of the filing of the notice of

removal, "all of the jurisdictional requirements of CAFA were then met"); cf.

---

[30] The district court attempted to distinguish the Fifth Circuit's decision in Braud from this case by noting that Braud concerned CAFA's treatment of a formal class action, not a mass action under § 1332(d)(11).  But as we have noted, the statute defines a "mass action" to be a "class action" for purposes of removal.  § 1332(d)(11)(A).  Of course, Braud does not speak to the issue of jurisdiction under the mass action provisions of § 1332(d)(11), but we see no reason why Braud's analysis of removal procedure under CAFA – which operates equally with regard to formal class actions and mass actions – is not persuasive here.

21

Evans, 449 F.3d at 1161 (noting that four out of eighteen defendants removed the case). Contra Brown v. Kerkhoff, No. 05-00274, 2005 WL 2671529, at \*16 (S.D. Iowa Oct. 19, 2005) (unpublished). The principle that one defendant may remove the action as a whole holds true even where, as here, the removing defendant was added after CAFA's effective date to an action that was filed against other defendants before CAFA was enacted. See Braud, 445 F.3d at 808 (holding that, where the removing defendant was added after CAFA's effective date and then was later dismissed from the action, the district court could properly maintain jurisdiction over the "action" with regard to the remaining pre-CAFA defendants).

3.

Our interpretation of the removal language in CAFA is consistent with the Act's overall statutory purpose, as well as removal practice outside the CAFA context. See Smith v. United States, 508 U.S. 223, 233, 113 S. Ct. 2050, 2056, 124 L. Ed. 2d 138 (1993) (instructing that, in matters of statutory interpretation, we must construe statutory provisions not in isolation, but in light of the statute as a whole); Dinkel, 400 F. Supp. 2d at 293 (noting that, under removal practice generally, "the entire lawsuit is removable or not removable, not merely the claims against particular defendants"). First, as to the statutory purpose, Congress expressly intended CAFA to expand federal diversity jurisdiction over class

22

actions. CAFA § 2, 119 Stat. at 5. To read the plain language of the removal provisions narrowly, such that removal would only be available as to claims against the particular removing defendants, would frustrate congressional intent that CAFA be used to provide for more uniform federal disposition of class actions affecting interstate commerce. CAFA § 2, 119 Stat. at 5. As a result of such a reading, certain defendants in a lawsuit could unilaterally elect to have the claims against them heard in a federal court while other defendants would be excluded from that forum, notwithstanding that all the claims against both sets of defendants arose from the same group of plaintiffs on common issues of law and fact. Such a result would run counter to the express purposes of CAFA.

Second, as to non-CAFA removal practice generally, we have previously read a similar removal provision as extending the scope of removal to encompass entire actions, not just individual claims. See In re Surinam Airways Holding Co., 974 F.2d 1255, 1258–60 (11th Cir. 1992). In our Surinam Airways decision, a panel of this court interpreted the language of the jurisdictional provision in 28 U.S.C. § 1441(d) – which creates removal jurisdiction over "[a]ny civil action . . . against a foreign state" – in light of plain language and legislative intent. Id. at 1258. We noted that "such open-ended language as 'any civil action' does not always serve to affirmatively grant jurisdiction over an entire case." Id. at 1259.

23

Nevertheless, our examination of the legislative intent, coupled with the lack of any express limitation on the plain language, led us to conclude that the statute's grant of removal jurisdiction over "any civil action" encompassed claims by or against other parties in the same lawsuit. Id. at 1259–60. In Surinam Airways, the removal provision at issue, which had been enacted as part of the Foreign Sovereign Immunities Act, was intended "to give foreign states the discretion to use a federal forum to litigate civil actions into which they have been brought" for the purpose of encouraging uniformity in that area of law. Id.

Although the context of CAFA is, of course, quite different from the Foreign Sovereign Immunities Act, the reasoning behind our interpretation of the latter statute's removal scheme is analogous. Congress intended CAFA to encourage the litigation of certain class actions – "cases of national importance" – in federal courts, so as to minimize bias against out-of-state defendants and promote the fair application of state law to the multifarious parties in class actions. CAFA § 2, 119 Stat. at 5. As in the case of § 1441(d), CAFA's purposes encourage a reading that makes more inclusive the scope of its removal provisions, not less inclusive. In light of that expansive construction of the removal provisions, we conclude that the district court erred in holding that the pre-CAFA defendants were not properly included in Alabama Power's removal.

Because we read CAFA's jurisdictional and procedural removal provisions to relate to the "class action" and not particular claims, the removal of the claims against all the defendants either stands or falls as a whole. We now turn our attention to the requirements set forth by CAFA for a district court to have subject matter jurisdiction over a mass action.

## III.

The defendants contend that the district court's remand order was improper because this action meets the requirements for federal diversity jurisdiction under CAFA. As discussed above, CAFA does not apply exclusively to class actions certified under Rule 23 or state analogues.[31] CAFA's mass action provisions extend federal diversity jurisdiction to certain actions brought individually by

---

[31] If CAFA's application were limited to traditional class actions, the defendants, here, would be required to meet the far more stringent jurisdictional thresholds of 28 U.S.C. § 1332(a). That section states two requirements: (1) that the parties be diverse; and (2) that the amount in controversy threshold – currently $75,000 – be met. Section 1332(a)'s diversity requirement has been interpreted to require "complete diversity" among the parties. University of South Alabama v. American Tobacco Co., 168 F.3d 405, 412 (11th Cir. 1999) (citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806)). Section 1332(a)'s amount in controversy requirement does not allow the claims of multiple plaintiffs to be aggregated to reach the jurisdictional threshold, see Zahn v. Int'l Paper Co., 414 U.S. 291, 301, 94 S. Ct. 505, 512, 38 L. Ed. 2d 511 (1973), and the claims of at least one of the individual plaintiffs must exceed the amount in controversy threshold for the court to assert jurisdiction. Exxon Mobil Corp. v. Allapattah Svcs, Inc., 545 U.S. 546, 559, 125 S. Ct. 2611, 2620, 162 L. Ed. 2d 502 (2005) (holding that if the claims of a single plaintiff meet the jurisdictional threshold the court may assert supplemental jurisdiction over additional plaintiffs' claims).

25

large groups of plaintiffs.  28 U.S.C. § 1332(d)(11).[32]  In the present suit, the

plaintiffs did not seek class certification.

The plaintiffs assert that this action does not qualify for treatment as a mass

action.  The defendants contend that the action, while not certified as a class action

under either federal or state law, is nonetheless a class action for purposes of

CAFA because it satisfies CAFA's mass action requirements.  In large part, this

dispute can be attributed to the parties' divergent interpretations of what

requirements an action must meet under CAFA to qualify as a mass action.

CAFA's mass action provisions present an opaque, baroque maze of

interlocking cross-references that defy easy interpretation,[33] even though they are

contained in a single paragraph of the amended diversity statute, 28 U.S.C. §

1332(d)(11), and are comprised of but four sub-paragraphs, only two of which are

---

[32] In extending CAFA to large individual state court cases that are functionally indistinguishable from class actions, the mass action provision prevents plaintiffs' counsel from avoiding CAFA's expanded federal jurisdiction by simply choosing not to seek class certification.  See S. Rep. No. 109-14, at 47 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 44 (noting that "mass actions are simply class actions in disguise").

[33] The district court aptly described the interpretational difficulties presented by this section of CAFA as a "Gordian knot."  Lowery v. Honeywell Intern., Inc., 460 F. Supp. 2d 1288, 1293 (N.D. Ala. 2006).  In Abrego Abrego v. Dow Chemical Co., 443 F.3d 676 (9th Cir. 2006), the Ninth Circuit described the wording of one mass action provision, 28 U.S.C. § 1332(d)(11)(a), as "clumsy" and noted that meshing the mass action provisions with the rest of § 1332 is "far from straightforward[,]" before declining to wade into this interpretational quagmire.  Id. at 681–82.

relevant for our purposes. 28 U.S.C. § 1332(d)(11)(A),(B).[34] The proper

interpretation of CAFA's mass action provisions is a matter of first impression in

this circuit. Thus, to resolve the current dispute, we are tasked with plotting the

proper route through this statutory labyrinth. We turn to that now.

A.

In interpreting a statute, we look first to the statute's plain meaning and, if

the statutory language is facially unambiguous, our inquiry comes to an end.

Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253–54, 112 S. Ct. 1146, 1149,

117 L. Ed. 2d 391 (1992); Harris v. Garner, 216 F.3d 970, 972 (11th Cir. 2000)

(en banc) ("We begin our construction . . . where courts should always begin the

process of legislative interpretation, and where they often should end it as well,

which is with the words of the statutory provision."). We begin, therefore, by

setting forth the relevant statutory provisions and looking to the plain meaning of

the language.

1.

The relevant substantive mass action provisions are found in § 1332(d)(11).

As we noted in discussing its implications for removal in part II.B, supra, sub-

---

[34] The two remaining mass action sub-paragraphs address the transfer of mass actions by the panel on multi-district litigation, 28 U.S.C. § 1332(d)(11)(C), and the tolling of statutes of limitations in mass actions. 28 U.S.C. § 1332(d)(11)(D).

paragraph (d)(11)(A) states that: "For purposes of [28 U.S.C. § 1332(d)] and

[CAFA's removal provisions], a mass action shall be deemed to be a class action

removable under paragraphs (2) through (10) if it otherwise meets the provisions

of those paragraphs."  28 U.S.C. § 1332(d)(11)(A).

On its face, sub-paragraph (d)(11)(A) serves two functions.  First, the

provision states that for the purposes of the CAFA amendments to the diversity

jurisdiction statute, a mass action "shall be deemed a class action."  §

1332(d)(11)(A).  This language makes it clear that a mass action is to be treated as

a class action, despite not meeting CAFA's definition of a class action under §

1332(d)(1)(B).[35]

Second, § 1332(d)(11)(A) comes with a proviso: a mass action is only

deemed a class action "if it otherwise meets the provisions of [§ 1332(d)(2)

through (10).]"  This language conditions a mass action's treatment as a class

action on the mass action conforming with eight additional statutory provisions, §

1332(d)(2) through (10).

These incorporated provisions cover a variety of terrain.  Some act to limit

---

[35] As we noted in part II.B, <u>supra</u>, for purposes of CAFA, a class action is defined as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by [one] or more representative persons as a class action[.]"  28 U.S.C. § 1332(d)(1)(B).

CAFA's expansion of federal diversity jurisdiction by authorizing a district court to decline jurisdiction over certain cases that may lack significant interstate impact,[36] or by creating an exception to jurisdiction for matters likely to be purely local controversies.[37] Other provisions create additional exceptions to jurisdiction

---

[36] Section 1332(d)(3) provides, in relevant part:

A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction . . . over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of–

(A) whether the claims asserted involve matters of national or interstate interest;

(B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

(C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

(D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

(E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

(F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3).

[37] Plaintiffs raised this "local controversy" exception as an alternative basis for remand. Section 1332(d)(4) provides, in relevant part:

in suits against states and state officials[38] and in certain securities litigation.[39]

---

A district court shall decline to exercise jurisdiction . . . –
(A)(i) over a class action in which–

    (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

    (II) at least 1 defendant is a defendant–

        (aa) from whom significant relief is sought by members of the plaintiff class;

        (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

        (cc) who is a citizen of the State in which the action was originally filed; and

    (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

28 U.S.C. § 1332(d)(4).

[38] Section 1332(d)(5)(A) provides that CAFA jurisdiction, as well as the two local controversy limitations on CAFA jurisdiction, "shall not apply to any class action in which . . . the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief[.]" 28 U.S.C. § 1332(d)(5)(A).

[39] Section 1332(d)(9) provides:

[CAFA jurisdiction] shall not apply to any class action that solely involves a claim–

Some provide guidance on the treatment of citizenship under CAFA.[40]  Finally,

some provisions, despite being incorporated into the mass action context by §

1332(d)(11)(A), seem to have no application to mass actions.[41]

---

> (A) concerning a covered security as defined under 16(f)(3) of the Securities Act of 1933 (15 U.S.C. 78p(f)(3)) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb(f)(5)(E));
>
> (B) that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or
>
> (C) that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and the regulations issued thereunder).

28 U.S.C. § 1332(d)(9).

[40] Section 1332(d)(7) sets forth how citizenship shall be determined in CAFA class actions, providing that:

> Citizenship of the members of the proposed plaintiff classes shall be determined . . . as of the date of filing of the complaint or amended complaint, or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction.

28 U.S.C. § 1332(d)(7).  Section 1332(d)(10) sets forth how the citizenship of unincorporated associations is treated for purposes of CAFA's jurisdictional and removal provisions, stating "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  28 U.S.C. § 1332(d)(10).

[41] Despite being specifically applied to mass actions through § 1332(d)(11)(A), § 1332(d)(8) clearly has no application outside the certified class action context.  That provision specifically addresses the timing of class certification, stating that § 1332(d) generally applies "to any class action before or after the entry of a class certification order by the court with respect to that action."  § 1332(d)(8).  An action qualifying as a mass action would not, by definition, have a class certification order, § 1332(d)(11)(B)(i).  Section 1332(d)(8), therefore, is never applicable to a mass action.  Moreover, the application to the mass action context of several of the other

31

Most importantly for our purposes, § 1332(d)(11)(A) incorporates into the mass action context a number of the requirements for a class action to qualify for CAFA diversity jurisdiction. Thus, for a mass action to be deemed a class action, the plaintiffs' claims must exceed an aggregate of $5,000,000, 28 U.S.C. § 1332(d)(2),(6),[42] and the parties must be minimally diverse, 28 U.S.C. §

provisions incorporated by §1332(d)(11)(A) is questionable. The language of these individual provisions could also be read to be applicable to only a certified class. For example, while § 1332(d)(11)(B)(i) creates a numerosity requirement specifically for mass actions, it is unclear how the class action numerosity requirement would be applied to mass actions through § 1332(d)(11)(A). See 28 U.S.C. § 1332(d)(5) ("Paragraphs (2) through (4) shall not apply to any class action in which . . . the number of members of all proposed plaintiff classes in the aggregate is less than 100.") (emphasis added). Regardless of how this tension is to be reconciled, however, on its face, § 1332(d)(11)(A) clearly subjects mass actions to the affirmative requirements of § 1332(d)(2) and, therefore, a mass action must have minimally diverse parties and must meet the $5,000,000 amount in controversy requirement.

These seemingly non-applicable provisions are not the only reason the Ninth Circuit described § 1332(d)(11)(A) as "clumsy." Abrego Abrego, 443 F.3d at 681. Section 1332(d)(11)(A) provides that a mass action will be deemed a "class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs." 28 U.S.C. § 1332(d)(11)(A) (emphasis added). It would seem, if one looked solely to this provision, that Congress intended to confer only removal jurisdiction over mass actions. The provision clearly states that mass actions are removable and makes no mention of original jurisdiction. In tension with this reading of the provision, however, is clear language that likewise subjects mass actions to the requirements of § 1332(d)(2) to (10). The tension arises because § 1332(d)(2) grants the district courts "original jurisdiction of any civil action which [meets CAFA's diversity and amount in controversy requirements.]" 28 U.S.C. § 1332(d)(2). It is not clear, therefore, whether a group of plaintiffs who, choosing not to certify as a class, but otherwise meeting the requirements for a mass action, would be permitted to file a mass action originally in a district court. As the present dispute is before us on appeal from a motion to remand, we need not address whether a mass action may be filed as an original action in district court. There is no dispute that 28 U.S.C. § 1332(d), at a minimum, provides the district court with removal jurisdiction over a mass action.

[42] Section 1332(d)(2) grants the district courts "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs[,]" 28 U.S.C. § 1332(d)(2), while § 1332(d)(6) allows the claims of all the class

1332(d)(2).[43]

## 2.

The second mass action provision, subparagraph (d)(11)(B)(i), defines a mass action:

> As used in [§ 1332(d)(11)(A)], the term 'mass action' means any civil action (except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

28 U.S.C. § 1332(d)(11)(B)(i).[44]

---

members to be aggregated.  § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").

[43] Under § 1332(d)(2), provided the other CAFA requirements are met, a district court has jurisdiction over a class action when:

> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
>
> (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
>
> (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

28 U.S.C. § 1332(d)(2).

[44] Sub-paragraph (d)(11)(B)(ii), while also addressing the definition of mass actions, is not relevant for our present purposes.  This provision specifically exempts certain actions from § 1332(d)(11)(B)(i)'s definition of a mass action.  28 U.S.C. § 1332(d)(11)(B)(ii).  The current action does not fall under any of these exceptions.

This sub-paragraph begins by excluding from the definition of mass actions those civil actions that fall within the scope of 28 U.S.C. § 1711(2). Section 1711(2) provides:

> The term "class action" means any civil action filed in a district court of the United States under rule 23 of the Federal Rules of Civil Procedure or any civil action that is removed to a district court of the United States that was originally filed under a State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representatives as a class action.

28 U.S.C. § 1711(2). Thus, § 1332(d)(11)(B)(i) makes clear that a class action certified under Rule 23, or a state equivalent to Rule 23, is not a mass action. Actions meeting the definition of § 1711(2) meet the requirements of CAFA's class action provisions, § 1332(d)(1), and can qualify for CAFA's expanded jurisdictional thresholds without resorting to the mass action provisions in § 1332(d)(11).

This exception in § 1332(d)(11)(B)(i) is followed by two affirmative requirements for a civil action to qualify as a mass action. First, there is a numerosity requirement: a mass action must involve the proposed "monetary relief claims of 100 or more persons[.]" 28 U.S.C. § 1332(d)(11)(B)(i).[45] Second, there

---

[45] This provision also appears to limit mass actions to suits seeking monetary relief. The definition, therefore, does not extend to actions seeking solely equitable relief. The CAFA provisions applicable to Rule 23 class actions and state equivalents do not contain a similar limitation. 28 U.S.C. § 1332(d)(1) to (10).

is a commonality requirement: "the plaintiffs' claims [must] involve common questions of law or fact[.]" 28 U.S.C. § 1332(d)(11)(B)(i).[46]

Combining the requirements drawn from § 1332(d)(11)(B)(i)'s definition of a mass action and those drawn from § 1332(d)(11)(A)'s incorporation of CAFA's class action requirements into the mass action context, we now have identified at least four requirements for an action to be deemed a mass action. These requirements are: (1) an amount in controversy requirement of an aggregate of $5,000,000 in claims; (2) a diversity requirement of minimal diversity; (3) a numerosity requirement that the action involve the monetary claims of 100 or more plaintiffs; and (4) a commonality requirement that the plaintiffs' claims involve common questions of law or fact.

Despite some minor tensions in the provisions discussed, it is clear from the plain language of the text that for an action to qualify as a mass action, at least these four requirements must be met. While the parties here dispute whether these four requirements have been satisfied – and who bears the burden of showing that

---

[46] In requiring that the plaintiffs' claims involve common questions of law or fact, this provision extends to mass actions a requirement shared by traditional class actions, Fed. R. Civ. P. 23(a) ("One or more members of a class may sue or be sued as representative parties on behalf of all only if . . . there are questions of law or fact common to the class[.]"), and a prerequisite to permissive joinder under Fed. R. Civ. P. 20(a) ("All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.").

35

the requirements have been met – they do not dispute that each is a threshold requirement to federal court jurisdiction over a mass action.

## B.

This brings us to the interpretational heavy-lifting. Unlike the four requirements we have identified, the proper interpretation of the final clause of § 1332(d)(11)(B)(i)'s definition of a mass action is disputed. This clause states certain conditions under which jurisdiction will exist over a mass action "except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)." 28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added). Under § 1332(a), the current amount in controversy threshold is $75,000.[47]

## 1.

The parties dispute the meaning of the $75,000 provision. The defendants argue that in choosing the word "except," Congress intended to create an exception to mass action diversity jurisdiction – that Congress intended to use "except" to mean "to the exclusion of." The plaintiffs, on the other hand, argue

---

[47] CAFA thus incorporates both an individual and an aggregate amount in controversy for mass actions. For the sake of clarity, for the remainder of this discussion, we refer to this incorporation of § 1332(a)'s amount in controversy requirement as the "$75,000 provision" or the "individual amount in controversy provision" and to the requirement of 28 U.S.C. § 1332(d)(2), (6) as the "aggregate amount in controversy requirement."

that Congress intended "except" to be read as "only."  Under the former approach, the $75,000 would seem to serve as an exception to jurisdiction, while under the latter, it would appear to be a threshold requirement.

The glosses each party seeks to put on congressional use of the word "except" comport with well known definitions of the word.  Webster's Third New International Dictionary 791 (1976) provides numerous definitions for the word "except," including definitions consistent with the defendants' interpretation – "with the exclusion or exception of" – and the plaintiffs' –  "only."  Congressional intent in using the term, therefore, cannot be divined from looking to that passage alone.

The defendants address this apparent ambiguity by arguing that the provision serves as an exception.  Thus, a district court has diversity jurisdiction over a civil action as a whole if the aggregate jurisdictional amount, minimal diversity, numerosity and commonality requirements are met.  Under these circumstances, the district court has jurisdiction over the action, but it lacks jurisdiction over an individual plaintiff whose claims do not exceed $75,000.  The claims of these individual plaintiffs must be returned to state court.  Under this reading, the numerosity and aggregate amount in controversy requirements are threshold requirements measured at the time of removal, while the $75,000

37

provision is treated as an exception addressed on a plaintiff-by-plaintiff basis after the action is removed.

The difficulty with the defendants' approach is that under this view the district court could retain jurisdiction over an action even if, in eliminating individual claims, the total number of plaintiffs in the action fell below 100 or the aggregate total of the remaining plaintiffs' claims fell below $5,000,000. Indeed, in the most extreme example under the defendants' interpretation, the district court would retain jurisdiction over the action even if only a single plaintiff remained with claims in excess of $75,000.

The plaintiffs, on the other hand, argue that Congress intended "except" to mean, in effect, "only." Under this reading, the $75,000 provision does not function as an exception, but as an additional primary requirement. Jurisdiction over a mass action would, therefore, only be proper if the four previously identified requirements were met and each of the individual plaintiffs had claims that exceeded $75,000.

The difficulty with the plaintiffs' argument is that, if the $75,000 provision creates an initial jurisdictional requirement – if, in other words, in the current context, the district court must consider the $75,000 provision in assessing the removability of the action as a whole – then the aggregate amount in controversy

requirement is surplusage. If there are 100 individual plaintiffs, as there must be under the numerosity requirement of § 1332(d)(11)(B)(i), and if their individual claims cannot be removed unless the claims of each plaintiff exceed $75,000, then one need not even resort to a calculator to deduce that the aggregate value of the claims of each of the 100 plaintiffs would be, at a minimum, $7,500,000. This approach negates the need for the $5,000,000 aggregate amount in controversy requirement of § 1332(d)(2), which is applied to mass actions through § 1332(d)(11)(A). Every civil action satisfying the numerosity requirement and the $75,000 provision would exceed $5,000,000 in the aggregate.

The district court, accepting the plaintiffs' argument, viewed the $75,000 inquiry as a threshold jurisdictional requirement. The court noted the tension between the $75,000 provision and the other mass action provisions and reasoned that "[i]f there is internal inconsistency in CAFA, that inconsistency must be resolved by giving predominance to the language that limits jurisdiction, and not to language that would expand it." Lowery v. Honeywell Int'l Inc., 460 F. Supp. 2d 1288, 1294 (N.D. Ala. 2006). The district court thus viewed the $75,000 inquiry as part of the inquiry into the removability of the action as a whole. Id. at 1293–94. The court did not discuss the effect this interpretation would have on the salience of the $5,000,000 aggregate requirement.

2.

When the meaning of statutory language cannot be divined from the face of the statute, we turn first to intrinsic aids to interpretation. Here, we rely on two well-established rules of statutory construction. First, we must construe the statute to give effect, if possible, to every word and clause. See Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157, 166–68, 125 S. Ct. 577, 583–84, 160 L. Ed. 2d 548 (2004); Jaggernauth v. U.S. Atty. Gen., 432 F.3d 1346, 1354 (11th Cir. 2005). Second, in determining the proper interpretation of a statutory provision, we must view the provision in the context of the statute as a whole. See Dolan v. U.S. Postal Service, 546 U.S. 481, ___, 126 S. Ct. 1252, 1257, 163 L. Ed. 2d 1079 (2006).

The interpretation given CAFA by the district court, and urged by the plaintiffs, would fail to give effect to every word and clause in CAFA. The $5,000,000 aggregate amount in controversy threshold would be rendered mere surplusage. By rejecting the interpretation proposed by the plaintiffs, we avoid this result.

Moreover, the context of CAFA as a whole counsels against the interpretation urged by the plaintiffs. As we observed, § 1332(d)(11)(A)

incorporated for mass actions the jurisdictional grant of § 1332(d)(2).[48]  That section states that "[t]he district court shall have original jurisdiction of <u>any civil action</u> in which the matter in controversy exceeds the sum or value of $5,000,000 . . . and is a class action in which [there is minimal diversity.]" § 1332(d)(2) (emphasis added).  This provision grants the district courts jurisdiction over the actual case and, moreover, § 1332(d)(6) directs the courts to aggregate individual plaintiff's claims in determining if the $5,000,000 threshold is satisfied.  By the terms of § 1332(d)(11)(B)(i), a mass action is, again, defined as "<u>any civil action</u>" for which the numerosity and commonality requirements are met.  28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added).  As such, in setting forth four of the five potential requirements for a mass action, the statute explicitly treats the civil action as a whole.

By contrast, the $75,000 provision states "that jurisdiction shall exist only over <u>those plaintiffs</u> whose <u>claims</u> in a mass action [exceed $75,000]."  28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added).  This language seems to refer to individual plaintiffs and their claims, not to the civil action as a whole.  Thus, read in the context of these other provisions, it seems clear that the $75,000 provision was not

_____

[48] Again, we note that we do not here resolve the tension between § 1332(d)(2)'s original jurisdiction language and § 1332(d)(11)(A)'s reference of removability.

41

intended to bar district courts from asserting jurisdiction over the entire case if each individual plaintiff's claims do not exceed $75,000.

C.

Though we conclude that, with use of the familiar canons of statutory construction, the meaning of the disputed provision becomes clear, we recognize that reasonable jurists often disagree on the clarity such canons can bring to statutory language. See Allapattah Services, Inc. v. Exxon Corp., 362 F.3d 739, 746–47 (11th Cir. 2004) (Tjoflat, J., dissenting from denial of reh'g en banc) (noting that courts had found multiple "plain meanings" in the same language of 28 U.S.C. § 1367, while still other courts had found ambiguity). When ambiguity in a statute renders congressional intent unclear, and that lack of clarity can not be resolved through the sort of intrinsic aids we have employed here, it is appropriate to resort to extrinsic aids such as legislative history. See Exxon Mobil Corp. v. Allapattah Svcs, Inc., 545 U.S. 546, ___, 125 S. Ct. 2611, 2625–27, 162 L. Ed. 2d 502 (2005) (recognizing the occasional need for, and limitations of, legislative history as an extrinsic aid when confronted with statutory ambiguity). Though we are mindful that it is error to cloud the plain meaning of a statutory provision with contrary legislative history, where, as here, the legislative history comports with the interpretation that has been adopted, and where there is a potential that others

42

may find ambiguity where we have found plain meaning, caution and completeness counsel that we discuss the statute's legislative history. Harris v. Garner, 216 F.3d 970, 976 (11th Cir. 2000) (en banc).

The Supreme Court "has repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which 'represen[t] the considered and collective understanding of those [Members of Congress] involved in drafting and studying proposed legislation.'" Garcia v. United States, 469 U.S. 70, 76, 105 S. Ct. 479, 483, 83 L. Ed. 2d 472 (1984) (quoting Zuber v. Allen, 396 U.S. 168, 186, 90 S. Ct. 314, 324, 24 L. Ed. 2d 345 (1969)). As such, we look to Senate Report 109-14 from the Senate Judiciary Committee. S. Rep. No. 109-14 (2005), reprinted in 2005 U.S.C.C.A.N. 3.[49]

The Senate Judiciary Committee Report squarely confronts how the tension between the mass action provisions is to be resolved.[50] In discussing 28 U.S.C. §

[49] CAFA was not referred to committee by the House. Instead, after Senate passage of CAFA, the bill was referred to the floor of the House for a vote. See H.R. 96, 109th Cong. (2005) (referring CAFA to the floor); 151 Cong. Rec. H723-01, H736 (statement of Rep. Watt) (noting that the bill had not been referred to the House Judiciary Committee); 151 Cong. Rec. H643-01, H647 (statement of Rep. Jackson-Lee) (same). As such, there is no accompanying House committee report.

[50] In interpreting CAFA, courts have taken pains to discuss the fact that S. Rep. 109-14 is dated February 28, 2005, ten days after CAFA was signed into law. See, e.g., Blockbuster, Inc. v. Galeno, 472 F.3d 53, 58 (2d Cir. 2006) ("[T]he Senate report was issued ten days after the enactment of the CAFA statute, which suggests that its probative value for divining legislative intent is minimal."). While the report was issued ten days following CAFA's enactment, it was submitted to the Senate on February 3, 2006 – while that body was considering the bill. 151

43

1332(d)(11), the report states:

> If a mass action satisfies the criteria set forth in the section (that is, it involves the monetary relief claims of 100 or more persons that are proposed to be tried jointly on the ground that the claims involve common questions of law or fact and it meets the tests for federal diversity jurisdiction otherwise established by the legislation), it may be removed to a federal court, which is authorized to exercise jurisdiction over the action. Under the proviso, however, it is the Committee's intent that any claims that are included in the mass action that standing alone do not satisfy the jurisdictional amount requirements of Section 1332(a) (currently $75,000), would be remanded to state court. Subsequent remands of individual claims not meeting the section 1332 jurisdictional amount requirement may take the action below the 100- plaintiff jurisdictional threshold or the $5 million aggregated jurisdictional amount requirement. However, so long as the mass action met the various jurisdictional requirements at the time of removal, it is the Committee's view that those subsequent remands should not extinguish federal diversity jurisdictional over the action.

S. Rep. No. 109-14, at 47 (2005), <u>reprinted in</u> 2005 U.S.C.C.A.N. 3, 44.

This view of § 1332(d)(11) is directly in line with the conclusions we reached in employing intrinsic interpretational aids: at least four primary requirements – $5,000,000 aggregate amount in controversy, minimal diversity, numerosity, and commonality – serve as threshold requirements for a district court to have subject matter jurisdiction over the <u>action</u> as a whole. Because we hold in part VI, <u>infra</u>, that the defendants have not established the $5,000,000 aggregate

---

Cong. Rec. S978-01, S978.

44

amount in controversy, we need not decide today whether the $75,000 provision might yet create an additional threshold requirement that the party bearing the burden of establishing the court's jurisdiction must establish at the outset, i.e., that the claims of at least one of the plaintiffs exceed $75,000.[51] See 28 U.S.C. § 1332(d)(11)(B)(i). We need only decide what the $75,000 provision does not do – namely, supplant the Act's plainly expressed $5,000,000 aggregate requirement by requiring a per-plaintiff minimum threshold requirement that ultimately requires a showing of claims worth $7,500,000 in the aggregate.

We conclude, therefore, that even were we to find the statutory language at issue ambiguous – and intrinsic canons of statutory construction failed to solve that ambiguity – by looking to the legislative history of the Act, our conclusion would remain unchanged.

---

[51] The Ninth Circuit – while explicitly declining to interpret the remaining mass action provisions – held that, the $75,000 provision, required, at a minimum, a showing that one plaintiff's claims exceed $ 75,000. Abrego Abrego, 443 F.3d at 689 ("[W]e do conclude . . . that the case cannot go forward unless there is at least one plaintiff whose claims can remain in federal court.").

On a related point, citing Exxon Mobil, 545 U.S. at 558, 125 S. Ct. at 2620, the defendants seize upon the plaintiffs' concession that at least some of the individual plaintiffs have claims that exceed $75,000 to argue that, provided the action as a whole satisfies the undisputed requirements for treatment as a mass action, the district court can assert supplemental jurisdiction over the remaining plaintiffs' claims under 28 U.S.C. § 1367. This argument is unavailing. Section 1367 does not apply where "expressly provided otherwise by Federal statute[.]" 28 U.S.C. § 1367(a). Regardless of whether the final clause of § 1332(d)(11)(B)(i) serves as a threshold requirement for federal diversity jurisdiction or an exception to that jurisdiction, it is clearly, by its own terms, the very sort of explicit statutory exception from supplemental jurisdiction that § 1367(a) contemplates.

**IV.**

Identifying CAFA's threshold requirements for subject matter jurisdiction over a mass action does not bring our task to an end. Several questions remain unanswered: which party bears the burden of establishing jurisdiction, what is that party's burden of proof, and what may a district court look to in deciding whether that burden has been met. Now, we turn to the first two of these inquiries.

**A.**

Consistent with the limited nature of federal jurisdiction, the party seeking a federal venue must establish the venue's jurisdictional requirements. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). Under this traditional rule, the defendants, having removed the case to the district court, would bear the burden of establishing the court's jurisdiction. The defendants contend, however, that this traditional rule frustrates CAFA's motivating congressional purpose of expanded access to the federal courts.[52] The defendants are not alone in this contention. Since its passage, courts have struggled with the question of whether CAFA shifts the burden of establishing jurisdiction in the removal context to the removed plaintiffs.

---

[52] Section 2(b) of CAFA indicates that one of its purposes is to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." CAFA § 2(b), 119 Stat. at 5.

The uncertainty surrounding the burden of proof in CAFA cases arises not from the text of CAFA itself – which is silent on the matter – but from a few discrete excerpts of the statute's legislative history. The most cited passage, taken from the Senate Committee Report, states: "If a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident." S. Rep. No. 109-14, at 42 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 40.[53]

Although several district courts have followed this apparent congressional intent in shifting the burden of proof onto the plaintiff,[54] the courts of appeals have been reluctant to make the shift from such a "longstanding, near-canonical rule." Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 684 (9th Cir. 2006); see

---

[53] During floor debate, a House sponsor expressed a similar intent with regard to the assignment of the burden: "If a purported class action is removed under these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improper." 151 Cong. Rec. H723, H727 (daily ed. Feb. 17, 2005) (statement of Rep. Sensenbrenner).

[54] See, e.g., Dinkel v. Gen. Motors Corp., 400 F. Supp. 2d 289, 295 (D. Me. 2005) (citing legislative history to support shifting the burden of proof onto the party opposing removal); Natale v. Pfizer, Inc., 379 F. Supp. 2d 161, 168 (D. Mass. 2005) ("Under the Act, the burden of [proof] is on the party opposing removal to prove that remand is appropriate."); Berry v. Am. Express Publ'g, Corp., 381 F. Supp. 2d 1118, 1122 (C.D. Cal. 2005) ("Although the burden of proof is not addressed in either the text of the original or the text of the new statute, the CAFA was clearly enacted with the purpose of expanding federal jurisdiction over class actions. . . . To this end, the [Senate] Committee Report expresses a clear intention to place the burden of removal on the party opposing removal to demonstrate that an interstate class action should be remanded to state court."), abrogated by Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006).

Blockbuster, Inc. v. Galeno, 472 F.3d 53, 58 (2d Cir. 2006) (recognizing the "long-standing judicial rules placing the burden on the defendant" to establish jurisdiction in removal cases); Morgan v. Gay, 471 F.3d 469, 473 (3d Cir. 2006) ("Under CAFA, the party seeking to remove the case to federal court bears the burden to establish that the amount in controversy requirement is satisfied."); Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir. 2005) ("The rule that the proponent of federal jurisdiction bears the risk of non-persuasion has been around for a long time.  To change such a rule, Congress must enact a statute with the President's signature (or by a two-thirds majority to override a veto).").  We have recently joined the Second, Third, Seventh, and Ninth Circuits in following the settled practice of placing the burden of proof on the removing defendant.  See Miedema v. Maytag Corp., 450 F.3d 1322, 1328 (11th Cir. 2006) (citing decisions of the Seventh and Ninth Circuits in maintaining that the removing party bears the jurisdictional burden of proof); Evans v. Walter Indus., Inc., 449 F.3d 1159, 1164 (11th Cir. 2006) ("CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction.").

## B.

Having established that CAFA does not shift the burden of proof in removal

actions,[55] we must still clarify what that burden is. For our purposes, therefore, we must identify the standard by which we measure the sufficiency of the defendants' showing that the plaintiffs' claims exceed $5,000,000 in aggregate.

We have held that, in the removal context where damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence. See Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1356–57 (11th Cir. 1996) (adopting the "preponderance of the evidence" standard after examining the various burdens of proof in different factual contexts), overruled on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072 (11th Cir. 2000); see also Abrego Abrego, 443 F.3d at 683 ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met."). Specifically, the removing defendant must establish the amount in controversy by "[t]he greater weight of the evidence, . . . [a] superior evidentiary weight that, though not sufficient to free the mind

---

[55] We note in passing that the law of this circuit shifts the burden of proving the applicability of exceptions to CAFA's removal jurisdiction to the plaintiff seeking a remand. See Evans, 449 F.3d at 1164 (shifting the burden of proof onto the plaintiff where the plaintiff sought "to avail itself of an express statutory exception [i.e., the local controversy exception] to federal jurisdiction granted under CAFA"). The defendants urge us to read Evans as shifting the burden onto the plaintiffs to prove which, if any, of the plaintiffs do not have claims exceeding the $75,000 amount in controversy included in 28 U.S.C. § 1332(d)(11)(B)(i). Although we find the argument quite compelling, we decline to address it here.

wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other." Black's Law Dictionary 1220 (8th ed. 2004).

We must acknowledge the peculiar implications of applying the preponderance of the evidence standard – a standard usually used to weigh competing pieces of evidence – to a situation, as here, where the court has only naked pleadings to consider.[56] See, e.g., Samuel-Bassett v. Kia Motors Am., Inc., 357 F.3d 392, 398 (3d Cir. 2004) (dictum) (noting that the preponderance of the evidence standard is appropriate for resolving disputes over factual matters). There is a unique tension in applying a fact-weighing standard to a fact-free context.[57] This tension compels us to take a closer look at how this precedent

---

[56] As we note in part V, infra, the district court (and this court on review) is generally limited to considering the removing documents in deciding the propriety of removal. There is a wide range of factual contexts, however, in which an evidentiary standard may seem appropriate. If, for example, upon removal, the defendant presents the court with scores of documents received through state court discovery tending to show the jurisdictional amount in controversy requirement is satisfied, and the plaintiff counters, upon motion to remand, with a store of its own documents tending to negate such an amount, the court may be called upon to weigh such evidence.

[57] Perhaps as a gesture toward this odd result, several similar cases in other circuits either expressly conflate the preponderance of the evidence standard with a "more likely than not" assessment, or skirt the former language altogether. See Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) ("Under this [preponderance of the evidence] burden, the defendant must provide evidence that it is 'more likely than not' that the amount in controversy exceeds [the minimum jurisdictional amount.]"); Gafford v. Gen. Elec. Co., 997 F.2d 150, 158 (6th Cir. 1993) ("We conclude that the 'preponderance of the evidence' ('more likely than not') test is the best alternative."); see also Rogers v. Wal-Mart Stores, Inc., 230 F.3d 868, 871 (6th

emerged in our circuit.

We first specifically adopted the preponderance of the evidence standard as the burden of proof in removed cases with unspecified damages in <u>Tapscott v. MS Dealer Service Corp.</u> 77 F.3d at 1357. In adopting this standard, <u>Tapscott</u> relied on the Sixth Circuit's decision in <u>Gafford v. Gen. Elec. Co.</u>, 997 F.2d 150 (6th Cir. 1993), which, in turn, cited <u>Garza v. Bettcher Indus., Inc.</u>, 752 F. Supp. 753 (E.D. Mich. 1990), which relied on the Supreme Court's opinion in <u>McNutt v. Gen. Motors Acceptance Corp. Of Ind., Inc.</u>, 298 U.S. 178, 56 S. Ct. 780, 80 L. Ed. 1135 (1936). Other circuits' use of the preponderance standard in this context can similarly be traced to <u>McNutt</u>. <u>See, e.g.</u>, <u>Shaw v. Dow Brands, Inc.</u>, 994 F.2d 364, 366 (7th Cir. 1993); <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566–67 (9th Cir. 1992). The reliance on <u>McNutt</u> for this standard is premised on language in that opinion suggesting that the party bearing the burden of proving jurisdiction may be required to do so by the preponderance of the evidence. <u>McNutt</u>, 298 U.S. at 189, 56 S. Ct. at 785 ("[T]he court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence.").

The application of the <u>McNutt-Garza-Tapscott</u> line to the present case is

Cir. 2000) (applying a "more likely than not" standard, without mention of "preponderance of the evidence," where a plaintiff alleged an amount in controversy below the federal jurisdictional amount).

51

problematic.  There is reason to question these courts' reliance on language in

McNutt suggesting the preponderance standard, as McNutt is distinguishable both

from the cases leading up to and including Tapscott and from the present action.

The action in McNutt did not arise from the removal context, but was brought

originally in federal court.  Id. at 179, 56 S. Ct. at 780–81.  The relevant language

in McNutt regarding the preponderance standard, moreover, is dicta.  The McNutt

Court did not apply a preponderance standard.[58]  Additionally, the McNutt Court's

discussion of the burden of proof noted that a more limited inquiry is appropriate

in a case in which a court has only the bare pleadings to consider.  The Court

stated that "[t]he prerequisites to the exercise of jurisdiction . . . must be met by

the party who seeks the exercise of jurisdiction in his favor.  He must allege in his

pleading the facts essential to show jurisdiction.  If he fails to make the necessary

allegations he has no standing."  Id. at 189, 56 S. Ct. at 785.  Lastly, we cannot

account for the sixty-year gap between the McNutt decision and the initial

adoption of its preponderance language in the present context in 1990 by the

Eastern District of Michigan in Garza, 752 F. Supp. at 763.

---

[58] The Court noted that the case before it was not one requiring the weighing of conflicting evidence; rather, the case involved a conclusory allegation of the amount in controversy in the complaint and no evidence in the record relevant to the jurisdictional inquiry. McNutt, 298 U.S. at 181, 56 S. Ct. at 781.  As such, the Court was not conducting the type of proof-based analysis that the preponderance standard may entail.  Id. at 189–90, 56 S. Ct. at 785.

Even assuming that Tapscott and similar decisions were correct in relying on McNutt, one might question the application of a preponderance of the evidence standard in a removal case – like this one – where there is no evidence to review. In each decision adopting the preponderance standard in the removal context, the court had before it evidence beyond the pleadings on which to base a decision about the amount in controversy. See Tapscott, 77 F.3d at 1357 n.10 ("At oral argument, attorney for Appellants conceded that if considered in the aggregate, punitive damages would exceed [the jurisdictional amount]."); Gafford, 997 F.2d at 160–61 (noting that the defendant's employee testified during a pretrial hearing on jurisdiction that the plaintiff's claims for back pay would satisfy the amount in controversy requirement); Garza, 752 F. Supp. at 763–64 (determining that additional evidence submitted by the defendant in support of its motion for reconsideration indicated that it was "more likely than not" that the amount in controversy was satisfied). We have no such evidence before us here.

Despite these distinctions, the preponderance standard has been adopted by this circuit in the naked pleading context. See Friedman v. N.Y. Life Ins. Co., 410 F.3d 1350, 1352–53 (11th Cir. 2005); Kirkland v. Midland Mortgage Co., 243 F.3d 1277, 1281 n.5 (11th Cir. 2001). We are bound to adhere to circuit precedent. Defendants must establish the jurisdictional amount by a

53

preponderance of the evidence. We note, however, that in situations like the present one – where damages are unspecified and only the bare pleadings are available – we are at a loss as to how to apply the preponderance burden meaningfully. We have no evidence before us by which to make any informed assessment of the amount in controversy. All we have are the representations relating to jurisdiction in the notice of removal and the allegations of the plaintiffs' third amended complaint. As such, any attempt to engage in a preponderance of the evidence assessment at this juncture would necessarily amount to unabashed guesswork, and such speculation is frowned upon. See Lindsey v. Ala. Tel. Co., 576 F.2d 593, 595 (5th Cir. 1978) (noting, in a removed class action, that "it was not open for defendants to attempt to show" the requisite amount in controversy per capita where the complaint made insufficient allegations, "[n]or was it open to the district court to speculate" on whether the jurisdictional facts existed).

In part V, infra, we conclude that the removal-remand scheme set forth in 28 U.S.C. §§ 1446(b) and 1447(c) requires that a court review the propriety of removal on the basis of the removing documents. If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction. If not, the court must

remand.  Under this approach, jurisdiction is either evident from the removing documents or remand is appropriate.  Significantly, if a defendant can only carry the burden of establishing jurisdiction under these circumstances, then the defendant could have satisfied a far higher burden than preponderance of the evidence.[59]  Regardless, our precedent compels us to continue forcing this square peg into a round hole.

## V.

We pause to take stock of what we have determined thus far.  With its notice of removal, Alabama Power removed this action as a whole, including the plaintiffs' claims against both the pre-CAFA defendants and Filler Products.  Because CAFA does not disturb the long-established rule that a removing defendant bears the burden of proving federal jurisdiction, upon the plaintiffs' motion to remand in this case, the defendants bear the burden of establishing the jurisdictional requirements for a CAFA mass action.  Furthermore, because this case involves a complaint for unspecified damages, the defendants must establish

---

[59] An example of such a higher standard would be "legal certainty," articulated by the Supreme Court in St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–89, 58 S. Ct. 586, 590, 82 L. Ed. 845 (1938).  The Red Cab Court dictated that "the sum claimed by the plaintiff [bringing an action in federal court] controls if the claim is apparently made in good faith," and applied a legal certainty standard in reviewing the jurisdictional amount.  Id. at 288–89, 58 S. Ct. at 590 ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").

jurisdiction by a preponderance of the evidence. We turn now to two related questions: (1) on what evidence may a removing defendant rely in asserting jurisdiction?; and (2) if that evidence is found wanting, may discovery be invoked to supplement that evidence?

A.

Our first question involves the scope of evidence on which a removing defendant may rely to establish jurisdiction. Because this inquiry depends upon how and when a defendant may remove a case to federal court, we discuss, at the outset, the relevant removal statutes. CAFA's removal provision, 28 U.S.C. § 1453(b), expressly adopts the procedures of the general removal statute, 28 U.S.C. § 1446, to govern the removal of mass actions.[60] As a threshold matter, § 1446(a)

---

[60] Section 1446 provides, in relevant part:

> (a) A defendant or defendants desiring to remove any civil action . . . from a State court shall file in the district court . . . a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

> (b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of

56

answers the question of <u>how</u> removal is accomplished, stating that a defendant

may remove any "civil action" by filing a notice of removal, signed pursuant to the

good faith requirements of Rule 11, which contains "a short and plain statement of

the grounds for removal."[61]  28 U.S.C. § 1446(a).  Section 1446(b) then answers

---

a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable[.]

28 U.S.C. § 1446.

[61] Rule 11 provides, in relevant part:

(a) Signature. Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer's address and telephone number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,–

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

the question of <u>when</u> an action is removable, setting forth the preconditions for removal in two types of cases: (1) those removable on the basis of an initial pleading; and (2) those that later become removable on the basis of "a copy of an amended pleading, motion, order or other paper."[62] § 1446(b).  Regardless of the type of case, a defendant must remove within thirty days of receiving the document that provides the basis for removal.  § 1446(b).

Thus, under § 1446(b), in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff – be it the initial complaint or a later received paper – and determines whether that document

---

> (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Fed. R. Civ. P. 11.

[62] In the second category of cases, the statute requires that jurisdiction be established by "an amended pleading, motion, order, or other paper." § 1446(b).  The first three items on this list are self-explanatory.  What constitutes "other paper," however, has been developed judicially.  Courts have not articulated a single test for identifying "other paper," but numerous types of documents have been held to qualify.  They include: responses to request for admissions, <u>Wilson v. Gen. Motors Corp.</u>, 888 F.2d 779, 780 (11th Cir. 1989); settlement offers, <u>Addo v. Globe Life & Accident Ins. Co.</u>, 230 F.3d 759, 761–62 (5th Cir. 2000); interrogatory responses, <u>Akin v. Ashland Chem Co.</u>, 156 F.3d 1030, 1036 (10th Cir. 1998); deposition testimony, <u>S.W.S. Erectors, Inc. v. Infax, Inc.</u>, 72 F.3d 489, 494 (5th Cir. 1996); demand letters, <u>Williams v. Safeco Ins. Co.</u>, 74 F. Supp. 2d 925, 929 (W.D. Mo. 1999); and email estimating damages, <u>Callahan v. Countrywide Home Loans, Inc.</u>, No. 3:06-105, 2006 WL 1776747, at *3–*4 (N.D. Fla. June 26, 2006).

and the notice of removal unambiguously establish federal jurisdiction.[63]  This

inquiry is at the heart of a case, such as the one before us, in which the plaintiffs

challenge removal by filing a timely motion to remand under § 1447(c).[64]  In

_____

[63] Under the first paragraph of § 1446(b), a case may be removed on the face of the complaint if the plaintiff has alleged facts sufficient to establish the jurisdictional requirements. Under the second paragraph, a case becomes removable when three conditions are present: there must be (1) "an amended pleading, motion, order or other paper," which (2) the defendant must have received from the plaintiff (or from the court, if the document is an order), and from which (3) the defendant can "first ascertain" that federal jurisdiction exists.  § 1446(b).  Under either paragraph, the documents received by the defendant must contain an unambiguous statement that clearly establishes federal jurisdiction.  See Bosky v. Kroger Texas, LP, 288 F.3d 208, 211 (5th Cir. 2002) (holding that grounds must be "unequivocally clear and certain"); Huffman v. Saul Holdings, LP, 194 F.3d 1072, 1078 (10th Cir. 1999) (same).

As we have noted, a removing defendant's counsel is bound by Rule 11 to file a notice of removal only when counsel can do so in good faith.  We think it highly questionable whether a defendant could ever file a notice of removal on diversity grounds in a case such as the one before us – where the defendant, the party with the burden of proof, has only bare pleadings containing unspecified damages on which to base its notice – without seriously testing the limits of compliance with Rule 11.  Unlike the typical plaintiff who originally brings a diversity action in federal court, the removing defendant generally will have no direct knowledge of the value of the plaintiff's claims.  See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288, 290, 58 S. Ct. 586, 590–91, 82 L. Ed. 845 (1938) (observing that "the sum claimed by the plaintiff controls if the claim is apparently made in good faith," and that "[the plaintiff] knows or should know whether his claim is within the statutory requirement as to amount").

To the extent the defendant does obtain knowledge of the claims' value, it will generally come from the plaintiff herself in the form of information in an "other paper."  See § 1446(b). This is so because a plaintiff who has chosen to file her case in state court will generally wish to remain beyond the reach of federal jurisdiction, and as a result, she will not assign a specific amount to the damages sought in her complaint.  In such a case, like the case before us, the defendant would need an "other paper" to provide the grounds for removal under the second paragraph of § 1446(b).  In the absence of such a document, the defendant's appraisal of the amount in controversy may be purely speculative and will ordinarily not provide grounds for his counsel to sign a notice of removal in good faith.

[64] Section 1447(c) provides, in relevant part: "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).  If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." § 1447(c).

assessing whether removal was proper in such a case, the district court has before

it only the limited universe of evidence available when the motion to remand is

---

We note that § 1447(c) distinguishes between motions to remand made within the first thirty days following removal, and challenges to subject matter jurisdiction brought after that time. Plaintiffs have only thirty days from the notice of removal to file a motion to remand challenging any procedural defects in the removal. § 1447(c); see Wilson, 888 F.2d at 781 n.1 (11th Cir. 1989) (citing Grubbs v. Gen. Elec. Credit Corp., 405 U.S. 699, 702, 92 S. Ct. 1344, 1347, 31 L. Ed. 2d 612 (1972)). The existence of subject matter jurisdiction, on the other hand, may be challenged at any time, including within the first thirty days after the notice of removal. § 1447(c); see Kontrick v. Ryan, 540 U.S. 443, 455, 124 S. Ct. 906, 915, 157 L. Ed. 2d 867 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance.").

There is only a thirty-day window, therefore, for a plaintiff to challenge the propriety of the removal itself, whether that challenge be on the basis of a procedural defect or a lack of subject matter jurisdiction. See Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353 (11th Cir. 1996), overruled on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000). Where the plaintiff does not challenge the removal on jurisdictional grounds until after judgment, or where the plaintiff challenges removal before judgment but after the thirty-day period has lapsed, the court is no longer considering the propriety of the removal, but instead, whether subject matter jurisdiction exists at all. See Grubbs v. Gen. Elec. Credit Corp., 405 U.S. 699, 702, 92 S. Ct. 1344, 1347, 31 L. Ed. 2d 612 (1972) ("Longstanding decisions of this Court make clear . . . that where after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court."). In considering these later challenges to jurisdiction, the court may look to any relevant information the parties may present, up until the time of the challenge to jurisdiction. See id.

filed[65] – i.e., the notice of removal and accompanying documents.[66]  If that

evidence is insufficient to establish that removal was proper or that jurisdiction

was present, neither the defendants nor the court may speculate in an attempt to

_____

[65] We note that our reading of §§ 1446(b) and 1447(c) does not conflict with our recent decision in Miedema v. Maytag Corp., 450 F.3d 1322 (11th Cir. 2006).  In Miedema, the application of § 1446(b) was not before the court.  The district court in Miedema had considered evidence that would likely fall outside the constraints of § 1446(b), but we concluded that, even if all the evidence the district court looked to could properly be considered, the defendants had failed to carry their burden.  Id. at 1330–32.  Because the evidence was insufficient to establish jurisdiction, we never examined § 1446(b) or the propriety of the court's consideration of this evidence.

[66] In noting that the district court is limited to considering the removing documents, we do not mean to suggest that the court does not have discretion to hold a hearing on the motion to remand and allow the parties to be heard.  Such a hearing would ordinarily be limited to arguments on the sufficiency of the removing documents, however.

Moreover, there are some exceptions to the rule that the court is limited to considering the removing documents.  A defendant would be free to introduce evidence regarding damages arising from a source such as a contract provision whether or not the defendant received the contract from the plaintiff.  In such situations, the underlying substantive law provides a rule that allows the court to determine the amount of damages.  For example, in contract law, the default measure of damages is expectation damages; a court may look to the contract and determine what those damages would be.  By contrast, "[w]here the law gives no rule, the demand of the plaintiff must furnish one."  McNutt, 298 U.S. at 182, 56 S. Ct. at 782.  When a plaintiff seeks unliquidated damages and does not make a specific demand, therefore, the factual information establishing the jurisdictional amount must come from the plaintiff.

Additionally, in some limited circumstances, a defendant may effectively amend a defective notice of removal upon receipt of additional evidence that supplements the earlier-filed notice.  For example, such a situation might arise where, after filing an insufficient notice of removal but before remand is ordered, the defendant receives a paper from the plaintiff that would itself provide sufficient grounds for removal.  See Cohn v. Petsmart, Inc., 281 F.3d 837, 839–40 n.1 (9th Cir. 2002) (holding that the defendant effectively amended its insufficient notice of removal by later alleging, in its opposition to remand, that the plaintiff had offered settlement for an amount greater than the jurisdictional minimum) (citing Willingham v. Morgan, 395 U.S. 402, 407 n.3, 89 S. Ct. 1813, 1816, 23 L. Ed. 2d 396 (1969)).

make up for the notice's failings.[67] See Lindsey v. Ala. Tel. Co., 576 F.2d 593, 595 (5th Cir. 1978) (holding that, where a complaint did not specify the number of plaintiffs in a class action, it was not open to the defendants or the court to speculate that the class was small enough to establish the minimum amount in controversy). The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars.

### B.

We next consider whether a district court faced with insufficient evidence to establish jurisdiction, may, in assessing the propriety of removal, invoke discovery to supplement that evidence. The defendants[68] argue that, if we hold that they have failed to carry the burden of establishing jurisdiction, we should remand the case to the district court with instructions to grant Alabama Power's motion for

---

[67] Allowing such speculation in the notice of removal with regard to the existence of jurisdiction would inevitably erode the "reasonable inquiry" standard of Rule 11 generally. If the court asserts jurisdiction on the basis of the defendant's speculative assertions, it implicitly accepts rank speculation as reasonable inquiry. This could undermine the requirement of reasonable inquiry not only in removal situations, but also in other contexts.

[68] The pre-CAFA defendants raised this discovery issue in their brief. Although Alabama Power did not address the issue in its own brief, its earlier motion for leave to serve limited discovery in the form of requests for admissions indicates that all the defendants seek discovery on the question of jurisdiction. Were we to remand to the district court with instructions to allow discovery, the defendants could conceivably obtain information relevant to jurisdiction from admissions, answers to interrogatories, or depositions.

leave to serve limited discovery.[69] When Alabama Power filed its motion for

discovery, the court reserved ruling, instead ordering the plaintiffs' counsel to

make admissions about the value of each plaintiff's claims – in effect, conducting

discovery on the court's own initiative.[70] Because there is no practical distinction

between these two types of "discovery" – the discovery sought by the defendants

and the admissions ordered by the court – we address them jointly in our

discussion below.

Post-removal discovery for the purpose of establishing jurisdiction in

diversity cases cannot be squared with the delicate balance struck by Federal Rules

of Civil Procedure 8(a) and 11 and the policy and assumptions that flow from and

---

[69] In arguing that they are entitled to supplemental discovery, the defendants rely on
Williams v. Best Buy Co., Inc., 269 F.3d 1316 (11th Cir. 2001). In Williams, a case involving
unspecified damages, we held that a removing defendant "should be afforded an opportunity to
submit evidence in support of [jurisdiction]," and we remanded to the district court for further
factual findings. Id. at 1321. The defendants urge us to read Williams broadly to apply in the
case before us. We decline to do so.

 The circumstances and posture of Williams are distinct from the present action. The
plaintiff in Williams did not contest the district court's jurisdiction over the action – the issue
was raised sua sponte by this court on the plaintiff's appeal from summary judgment. 269 F.3d
at 1318. The Williams court explicitly limited the scope of its holding, noting that remand for
further factual findings was necessary "where the notice of removal asserts the jurisdictional
amount and the plaintiff does not challenge that assertion in the district court[.]" Id. at 1321
(emphasis added).

[70] The court instructed the plaintiffs' counsel to file with the court the names of any
plaintiffs whose claims were likely to exceed $75,000. This instruction amounted to a request
for admissions from the plaintiffs regarding their individual amounts in controversy.

underlie them.[71]  Certainly, the power to grant discovery generally is conferred to

the sound discretion of the district court, and post-removal jurisdictional discovery

may appear to present a viable option for a court examining its jurisdiction.

Jurisdictional discovery could avoid the problem of speculation by the court.

Sound policy and notions of judicial economy and fairness, however, dictate that

we not follow this course.

To illustrate, we begin with the paradigmatic case of a plaintiff filing an

original diversity action in federal court.  As discussed in part IV, supra, the party

who invokes the jurisdiction of the court has the burden of establishing

jurisdiction.  Rule 8(a) requires the plaintiff to set forth in the complaint the

factual support for jurisdiction.[72]  Fed. R. Civ. P. 8(a).  The plaintiff's factual

---

[71] Our holding here is limited to diversity cases.  Because federal question jurisdiction is to some extent intertwined with the existence of a valid federal claim on the merits, it has long been established that federal question cases require a stricter standard for dismissal on jurisdictional grounds.  See, e.g., Bell v. Hood, 327 U.S. 678, 682–83, 66 S. Ct. 773, 776, 90 L. Ed. 939 (1946); Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 733–34 (11th Cir. 1982).  Consequently, in such cases, "a plaintiff must have ample opportunity to present evidence bearing on the existence of jurisdiction."  Colonial Pipeline Co. v. Collins, 921 F.2d 1237, 1243 (11th Cir. 1991).  Nevertheless, as the former Fifth Circuit noted, "a jurisdictional attack which does not implicate the merits of any federal cause of action is not bound by the strict Bell v. Hood standard.  A district court may find, for example, that the basis for diversity jurisdiction is absent without finding that the underlying state claim is 'immaterial' or 'insubstantial.'"  Williamson v. Tucker, 645 F.2d 404, 416 n.9 (5th Cir. May 1981).

[72] Rule 8(a) states in relevant part that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the grounds upon which the court's jurisdiction depends[.]"  Fed. R. Civ. P. 8(a).

allegations are subject to Rule 11's command – under pain of sanctions – that the "allegations and other factual contentions have, [or are likely to have following discovery,] evidentiary support[.]" Fed. R. Civ. P. 11(b). By filing the action in federal court, the plaintiff is making a representation that the action belongs before the court. Red Cab, 303 U.S. at 288, 290, 58 S. Ct. at 590–91. Because counsel is subject to Rule 11 sanctions, we assume that this representation is made in good faith and that the plaintiff has factual bases for believing that the federal court has jurisdiction to hear the claims.

Despite the plaintiff's representation and our assumption of good faith, if a material element required for either the substantive claim or the court's subject matter jurisdiction is missing from the complaint, the defendant may move to dismiss. If the plaintiff's counsel concedes that the plaintiff lacks the evidence necessary to cure the deficiency, the court may dismiss the action for failure to state a claim or want of jurisdiction. In either case, without further discovery, counsel cannot in good faith amend the complaint to provide the missing element. In our hypothetical diversity case, should the plaintiff request leave to conduct discovery to support its assertion that the case is properly before the court, the court would deny such a request. In such a situation, the court would not reserve ruling on the motion to dismiss in order to allow the plaintiff to look for what the

65

plaintiff should have had – but did not – before coming through the courthouse doors, even though the court would have the inherent power to do so. In deciding if dismissal is proper, a court would look only to the facts as alleged in the complaint and would not waste limited judicial resources by directing its inquiry elsewhere.

Just as a plaintiff bringing an original action is bound to assert jurisdictional bases under Rule 8(a), a removing defendant must also allege the factual bases for federal jurisdiction in its notice of removal under § 1446(a).[73] Though the defendant in a diversity case, unlike the plaintiff, may have no actual knowledge of the value of the claims, the defendant is not excused from the duty to show by fact, and not mere conclusory allegation, that federal jurisdiction exists. Indeed, the defendant, by removing the action, has represented to the court that the case belongs before it. Having made this representation, the defendant is no less subject to Rule 11 than a plaintiff who files a claim originally.[74] Thus, a defendant

---

[73] Section 1446(a)'s requirement of "a short and plain statement of the grounds for removal" is consonant with the pleading requirements of Rule 8(a).

[74] The legislative history for § 1446 is limited, but it does indicate that Congress intended § 1446 to be read alongside the good faith requirements of Rule 11 and Rule 8(a) pleading requirements. The House Report of the Judiciary Committee clarified the 1988 amendments to § 1446(b):

> The sanctions available under Civil Rule 11 apply to every "other paper", but it seems desirable to make it clear that they are available in cases of improvident removal. The present requirement that the petition of removal state the facts

that files a notice of removal prior to receiving clear evidence that the action satisfies the jurisdictional requirements, and then later faces a motion to remand, is in the same position as a plaintiff in an original action facing a motion to dismiss. The court should not reserve ruling on a motion to remand in order to allow the defendant to discover the potential factual basis of jurisdiction. Such fishing expeditions would clog the federal judicial machinery, frustrating the limited nature of federal jurisdiction by encouraging defendants to remove, at best, prematurely, and at worst, in cases in which they will never be able to establish jurisdiction.

---

supporting removal has led some courts to require detailed pleading. Most courts, however, apply the same liberal rules that are applied to other matters of pleading. The proposed amendment requires that the grounds for removal be stated in terms borrowed from the jurisdictional pleading requirement establish[ed] by [C]ivil [R]ule 8(a).

H.R. Rep. 100-889 (Aug. 26, 1988), reprinted in 1988 U.S.C.C.A.N. 5982, 6032. There was no Senate Report for § 1446.

Section 1446's invocation of Rule 11 further supports our decision with regard to the assignment of the burden of proof in part IV, supra. As we have noted, some district courts rely on CAFA's legislative history in shifting to the plaintiff the jurisdictional burden of proof. Such an assignment of the jurisdictional burden oddly divorces the burden from the defendant, who, under § 1446 – and, by incorporation, Rule 11 – must make good faith averments that jurisdiction exists. Assigning the burden to the plaintiff is the equivalent of giving the removing defendant a presumption that jurisdiction exists. If the plaintiff attempts to prove the non-existence of jurisdiction by averring that the claims are worth less than the required jurisdictional amount, the plaintiff may be estopped in state court from arguing that the claims exceed that amount. In such situations, the plaintiff's counsel could not contest the jurisdictional amount without working to the client's detriment. Yet, in the absence of any statement from the plaintiff, the defendant's assertion of the jurisdictional amount would be unchallenged. Thus, the plaintiff would effectively be forced to concede to the removal. Had Congress intended that CAFA so disrupt the policy behind § 1446, it would not have incorporated that statute directly into CAFA.

Here, Alabama Power is a removing defendant that has asserted no factual basis to support federal jurisdiction and now faces a motion to remand. As in the scenario above, the defendants here asked that the district court reserve ruling on the motion to remand so that they could conduct discovery to obtain information from the plaintiffs that would establish that the court has jurisdiction. The defendants' request for discovery is tantamount to an admission that the defendants do not have a factual basis for believing that jurisdiction exists. The natural consequence of such an admission is remand to state court.

Post-removal discovery disrupts the careful assignment of burdens and the delicate balance struck by the underlying rules. A district court should not insert itself into the fray by granting leave for the defendant to conduct discovery or by engaging in its own discovery.[75] Doing so impermissibly lightens the defendant's burden of establishing jurisdiction. A court should not participate in a one-sided subversion of the rules. The proper course is remand.[76]

---

[75] This is not to say that the district court would be precluded from engaging in conduct that is within its inherent power, but falls short of invoking formal discovery, such as questioning a plaintiff's counsel in open court about the value of the plaintiff's claims.

[76] Even if there were no Rule 11 and 8(a) policy concerns, we would still doubt the propriety of discovery in this context. Discovery is a matter of discretion for the court. The court's denial, grant, or limitation of a motion for discovery is reviewed for abuse of discretion. See Moorman v. UnumProvident Corp., 464 F.3d 1260, 1264 (11th Cir. 2006). A trial court, therefore, would indirectly control the outcome of the motion to remand by exercising or refusing to exercise its discretion. If a court refused to exercise its discretion to allow jurisdictional discovery, the case would be remanded. But we review the decision not to allow discovery – a

## VI.

We turn now to the merits of this case. In the present dispute, the defendants sought immediate review of the district court's remand order under CAFA. 28 U.S.C. § 1453(c). Because jurisdiction was challenged within thirty days of removal, and remand was promptly granted, we are limited in our review to determining whether the pleadings or "other paper" included with the notice of removal provide an unambiguous statement that clearly establishes federal jurisdiction over this action.

As an initial matter, the district court's consideration of the mass action jurisdictional requirements was limited to the claims against Alabama Power, because the court concluded that the notice of removal brought before it only the claims against Alabama Power. We held in part II, supra, that Alabama Power's notice of removal removed all of the plaintiffs' claims; therefore, we consider the question of whether the jurisdictional thresholds are met in light of the action as a whole, including all defendants.

As we noted in part I, supra, Alabama Power's initial notice of removal included only conclusory allegations that each of CAFA's mass action provisions

---

decision which would effectively decide that the action would be remanded – for abuse of discretion. Motions to remand should be decided on the merits as a matter of law, not incidentally as a result of the discretion of a court.

69

was satisfied. Alabama Power attached two documents to the notice of removal: the third amended complaint and plaintiffs' initial complaint. The plaintiffs' motion to remand this case presented two arguments against the district court's jurisdiction: (1) that this lawsuit fails to meet CAFA's mass action jurisdictional requirements; and (2) that even if those jurisdictional requirements are met, jurisdiction is nonetheless inappropriate because the case falls under CAFA's "local controversy" exception of 28 U.S.C. § 1332(d)(4).[77] Because we hold that this action – as depicted in plaintiffs' third amended complaint – fails to satisfy CAFA's jurisdictional requirements for a mass action – specifically, that defendants have failed to carry their burden in establishing that plaintiffs' claims are potentially valued at $5,000,000 or more[78] – we need not reach plaintiffs' second contention.

Under § 1446(b), we look to the face of the notice of removal and any attached documents to determine if we have jurisdiction. Here, we first consider

---

[77] We set forth the text of this exception in note 37, supra.

[78] It is manifest from the face of the plaintiffs' amended complaint – and the plaintiffs do not dispute – that this action satisfies CAFA's numerosity, commonality, and minimal diversity requirements. The plaintiffs conceded in open court that at least one of the individual plaintiff's claims exceeded $75,000. Such a concession may effectively amend Alabama Power's notice of removal, see Willingham v. Morgan, 395 U.S. 402, 407 n.3, 89 S. Ct. 1813, 1816, 23 L. Ed. 2d 396 (1969), and support Alabama Power's conclusory allegation on the subject. Because we hold that defendants fail to establish the aggregate amount in controversy, we do not reach this issue.

the third amended complaint, which Alabama Power attached to its notice of removal. That complaint contains neither an ad damnum clause indicating the amount of damages sought, nor any other concrete information about the value of plaintiffs claims. As such, we find no unambiguous statement on the face of the amended complaint that would be sufficient to establish that plaintiffs' claims potentially exceed $5,000,000 in aggregate.

In addition to the operative third amended complaint, Alabama Power attached to its notice of removal a copy of plaintiffs' initial complaint in this case. That complaint included an ad damnum clause seeking $1,250,000 in damages for each of the nine initial plaintiffs from the twelve initial defendants. The defendants contend that the initial complaint is sufficient to establish that the plaintiffs are seeking in excess of $5,000,000 in aggregate. We disagree.

We note that Alabama Power could have relied, in the absence of the third amended complaint, on the initial complaint as a jurisdiction-communicating document under § 1446(b). While the initial complaint was filed more than thirty days prior to Alabama Power's July 17, 2006 removal, Alabama Power was not added to this action until June 20, 2006 – less than thirty days prior to removal. Alabama Power would have first been aware of this initial complaint, therefore, when it was made privy to the record as a whole. This occurred upon Alabama

71

Power's addition as a defendant less than thirty days prior to removal.[79]

That Alabama Power did not actually receive the initial complaint directly from the plaintiffs does not bar Alabama Power's reliance on the document under § 1446(b). The initial complaint was drafted and filed by the plaintiffs and became a matter of record in this action. Alabama Power, therefore, constructively received this complaint from the plaintiffs when it became privy to that record.

That said, however, it would be improper to bind plaintiffs by the prayer for relief in the initial pleading. Plaintiffs have since amended the prayer for relief, and this amended prayer for relief supersedes the one contained in the initial complaint. Under both Alabama and federal law, an amended complaint supersedes the initial complaint and becomes the operative pleading in the case. See Fritz v. Standard Sec. Life Ins. Co. of New York, 676 F.2d 1356, 1358 (11th Cir. 1982); Ex parte Puccio, 923 So.2d 1069, 1072–73 (Ala. 2005). Moreover, the jurisdictional allegations in both complaints were subject to the requirements of

_____

[79] The thirty-day window would likewise not have barred Alabama Power from relying on evidence gleaned from the discovery conducted by the pre-CAFA defendants during the more than three years between the filing of the initial complaint and Alabama Power's notice of removal. Any such evidence would have been in Alabama Power's possession for less than thirty days. Because the removing papers make no mention of the state court discovery, the state court record did not include any discovery, and a complete record of the discovery was not provided to this court, we can only conclude that defendants do not rely on any discovered evidence as "other paper" under § 1446(b) in arguing for jurisdiction.

72

Alabama Rule of Civil Procedure 11.[80]  We accordingly presume that the plaintiffs' original demand of $1,250,000 reflected counsels' good faith assessment of the full value of their claims at the time.  We likewise must presume, however, that the plaintiffs' amended, unspecified demand clause also reflects counsels' revised good-faith determination regarding damages.  The third amended complaint represents counsels' belief that counsel could, in good faith, state only that the plaintiffs' claims put in controversy an amount greater than the Alabama Circuit Courts' jurisdictional minimum of $3,000.  In short, we do not bind parties to a figure counsel cannot advance in good faith.  The plaintiffs amended their complaint to remove the specific damages demand, and that amended pleading is the document we look to in determining whether jurisdiction exists.

Following the plaintiffs' motion to remand, Alabama Power supplemented its notice of removal.  Alabama Power's supplement advanced three arguments to

---

[80] Ala. R. Civ. P. 11 states, in relevant part:

Every pleading, motion, or other paper of a party represented by an attorney shall be signed by at least one attorney of record . . . .  The signature of an attorney constitutes a certificate by the attorney that the attorney has read the pleading, motion, or other paper; that to the best of the attorney's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay.

Ala. R. Civ. P. 11.  Alabama Rule 11 tracks the original text of Fed. R. Civ. P. 11 at its adoption in 1938.

support federal jurisdiction over this action. We have just disposed of one of these arguments – that the initial complaint's ad damnum clause established the aggregate amount in controversy. In addition, Alabama Power contended that the amount in controversy could be derived from the number of plaintiffs and the nature of the claims asserted. Finally, the supplement also provided the district court with evidence regarding the value of purportedly similar tort claims in Alabama and argued that this evidence was sufficient to establish the aggregate amount in controversy. Neither argument is sufficient to establish jurisdiction.

The supplement contended – and the defendants argue on appeal – that the nature of the claims the plaintiffs have asserted supports a conclusion that those claims exceed the required aggregate jurisdictional amount. We do not agree. Whatever indications of value can be gleaned from the plaintiffs' pleadings are insufficient to support a conclusion that the plaintiffs' claims were potentially valued at $5,000,000 or more in the aggregate. The defendants' argument is premised on the observation that, to reach the jurisdictional threshold, each of the roughly 400 plaintiffs need only recover, on average, $12,500. It may be true, in light of the nature of the claims the plaintiffs assert – seeking, among other things, recovery for an ongoing nuisance and punitive damages – that a recovery of $12,500 per plaintiff appears to be a relatively low hurdle. Nevertheless, we fail

to see how we can justify a conclusion that the per-plaintiff recovery will exceed even so low a total. To reach such a conclusion, we would necessarily need to engage in impermissible speculation – evaluating without the benefit of any evidence the value of individual claims. The complaint alone cannot satisfy the defendants' burden in proving jurisdiction.

The additional "evidence" contained in the supplement likewise fails to support the defendants' contention that the district court had jurisdiction over this action. First, we note that this evidence regarding the value of other tort claims was not received from the plaintiffs, but rather was gathered from outside sources. As such, the evidence is not of the sort contemplated by § 1446(b). Even if the defendants had received the evidence of other suits from the plaintiffs, we question whether such general evidence is ever of much use in establishing the value of claims in any one particular suit. Looking only to this evidence and the complaint, the facts regarding other cases tell us nothing about the value of the claims in this lawsuit. Even were we to look to evidence beyond that contained within the notice of removal, in the present dispute – with a record bereft of detail – we cannot possibly ascertain how similar the current action is to those the defendants cite. Absent specific detail about the present action, the supplement in no way clarifies the aggregate value of the claims here. The defendants, therefore,

75

have failed to meet their burden.

## VII.

A brief summary of our conclusions is warranted. First, we hold that any one defendant authorized under CAFA to remove the plaintiffs' claims against that defendant to federal court may remove the action as a whole, regardless of whether other defendants in the action would be authorized to remove their claims.

Second, we hold that CAFA sets forth at least four threshold requirements for a federal court to have subject matter jurisdiction over a removed mass action. Where the parties are minimally diverse, the action consists of 100 plaintiffs or more, the plaintiffs' claims share common questions of law or fact, and the potential aggregate value of all the claims exceeds $5,000,000, the action may be removed to federal court as a mass action.

Third, we hold that the defendants are not entitled to remand to the district court for limited jurisdictional discovery, nor may the district court conduct such discovery on its own initiative.

Moving to the merits, we hold that the defendants here are unable to meet their burden of establishing the requirements for federal jurisdiction over a mass action, because they are unable to establish that the plaintiffs' claims are potentially valued at more than $5,000,000. Tracking § 1446(b), we note that the

defendants' notice of removal contained no document clearly indicating that the aggregate value of the plaintiffs' claims exceeds that amount and, as such, they are unable to establish federal jurisdiction by a preponderance of the evidence.

In sum, though our reasoning diverges substantially from that of the district court, the disposition of this case remains the same. Remanding this action to state court was the appropriate course. The district court's order is accordingly

**AFFIRMED.**